**AN–SON CORPORATION,**
**Plaintiff-Appellee,**

v.

**HOLLAND–AMERICA INSURANCE COMPANY, Defendant-Appellant.**

**No. 83–1858.**

United States Court of Appeals,
Tenth Circuit.

July 11, 1985.

T. Mark Blakemore, of Royston, Rayzor, Vickery & Williams, Brownsville, Tex. (James Patrick Cooney, of Royston, Rayzor, Vickery & Williams, Brownsville, Tex., and Robert D. Looney, Sr., of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., with him on the briefs), for Defendant-Appellant.

Ben L. Burdick, Crowe & Dunlevy, Oklahoma City, Okl. (H. Leonard Court, with him on the brief), for Plaintiff-Appellee.

Before BARRETT, BREITENSTEIN and TIMBERS *, Circuit Judges.

* Honorable William H. Timbers of the United States Court of Appeals for the Second Circuit, sitting by designation.

TIMBERS, Circuit Judge.

Holland-America Insurance Company (Holland-America) appeals from a judgment entered June 8, 1983, in the Western District of Oklahoma, David L. Russell, District Judge, awarding An-Son Corporation (An-Son) its costs and attorneys fees in defending against a personal injury action brought by an An-Son employee injured as a result of an accident on Lake Maracaibo, Venezuela. Holland-America refused to defend An-Son in that action, relying on language in its contract of insurance with An-Son which excluded coverage for operations performed on "oceans, gulfs or bays". Holland-America believed that Lake Maracaibo, despite its official designation as a lake, fell within that exclusionary clause. Holland-America also appeals from the district court's order entered May 11, 1983 granting An-Son's post-judgment motion for attorneys fees and expenses incurred in litigating this action. We affirm.

I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on this appeal.

In January 1973, Holland-America issued a $1,000,000 policy of umbrella liability insurance to An-Son. The policy had a $25,-000 deductible. Although the policy covered liability for most of An-Son's drilling operations, it had a clause identified as "Endorsement C" which excluded "liability arising out of work or operations performed on any oil or gas lease in oceans, gulfs or bays".

In February 1974, while the policy was in effect, one of An-Son's employees was injured in an accident on a tender barge operating on Lake Maracaibo, Venezuela. The employee subsequently commenced an action against An-Son seeking $1,000,000 damages. An-Son thereupon requested Holland-America to come in and defend it

in this action pursuant to the liability insurance policy. Holland-America refused to do so. It relied principally on Endorsement C, since it was of the belief that Lake Maracaibo was a bay rather than a lake and therefore came within the exclusionary language of that clause endorsement. An-Son provided its own representation and the action eventually was settled. An-Son's contribution to the settlement was $25,000. An-Son also expended $1,652.21 in court costs and $88,205.85 in attorneys fees. The reasonableness of these amounts is not in dispute.

In May 1980, An-Son commenced the instant action in an effort to recover these expenditures, alleging that Holland-America had breached its duty to defend An-Son in the earlier action. In order to determine whether there had been a breach of Holland-America's duty under its contract of insurance with An-Son, it was necessary to answer the essential question of whether Lake Maracaibo was a lake or a bay.

At trial both sides presented expert witnesses to support their respective positions. An-Son's expert, Dr. Marvin Baker, Jr., an Associate Professor of Geography at the University of Oklahoma, testified that Lake Maracaibo opens through the Straits of Maracaibo to Tablazo Bay, which opens to the Gulf of Venezuela, which opens to the Carribean Sea. He testified that, although Lake Maracaibo is not land-locked as most lakes are, its predominant characteristics are those of a lake. Specifically, he testified that ninety-five percent of the water in Lake Maracaibo is fresh water which flows down from the various streams and rivers which surround it. It is this feature, in Baker's opinion, which is the essential characteristic of all lakes. Conversely, he testified that Tablazo Bay and the Gulf of Venezuela were predominantly sea water and depended for their existence on a water supply eminating from the Carribean Sea and the Atlantic Ocean. Baker also produced several standard reference works in the field of geography which supported his opinion that historically Lake Maracaibo has been considered a lake.

Holland-America's expert was Dr. William Merrill, Jr., an Associate Professor of Oceanography at Texas A & M University. He testified that Lake Maracaibo does not contain standing water—a general characteristic of most lakes; rather, it is subject to tidal action coming from the Gulf of Venezuela through Tablazo Bay. He also testified that changes in the height of the water in the Gulf of Venezuela are transferred immediately to Lake Maracaibo, and that there are sea water creatures in both.

Based on this expert testimony, and the various maps, charts, encyclopedias, dictionaries and other reference works admitted in evidence, the court concluded that the overwhelming consensus of authority supported An-Son's belief that Lake Maracaibo indeed is a lake. The court also stated that, without first hiring an oceanographer and a geographer, An-Son would have been unable to discern anything else, since the maps, charts, and most reference works refer to Maracaibo as a lake. An-Son reasonably could believe that its operations on Lake Maracaibo were not excluded from coverage under the policy. Since Lake Maracaibo did not fall within the exclusionary language of Endorsement C, the court held that Holland-America had breached its duty to defend An-Son in the earlier action.

## II.

Initially, it should be borne in mind that the status of Lake Maracaibo is a factual question. As such, the finding of the district court that it is a lake will not be disturbed unless it is clearly erroneous. Fed.R.Civ.P. 52(a). It is not necessary for us to decide whether the court reached the correct conclusion, but only whether it reached a permissible conclusion in light of the evidence. *Volis v. Puritan Life Insurance Co.*, 548 F.2d 895, 901 (10th Cir.1977). Having carefully reviewed the record, we cannot say that the court's finding was clearly erroneous. The evidence consisted primarily of a "battle of experts". The resolution of such conflicting evidence is appropriately the province of the trial court. We are loath to disturb a finding

based upon such conflicting evidence. *Id.;* *United States v. 79.95 Acres of Land, etc., Rogers County, State of Oklahoma,* 459 F.2d 185, 187 (10th Cir.1972).

■ We agree with the court's statement that, in determining the status of Lake Maracaibo for the purpose of defining coverage under the policy, "[p]erhaps how it is known is more important than what it actually is." Under Oklahoma law, a contract of insurance ordinarily must be construed liberally in favor of the insured and strictly against the insurer where there exists any ambiguity, doubt or uncertainty as to its meaning. *Continental Casualty Co. v. Beaty,* 455 P.2d 684, 688 (Okla.1969). An insurance policy's words of exclusion are to be narrowly viewed. *Conner v. Transamerica Insurance Co.,* 496 P.2d 770, 774 (Okla.1972).

■ The ambiguity in the instant policy was created by Holland-America's failure to specify the types of hazardous conditions against which it was unwilling to insure. Endorsement C specifically refers only to operations on "oceans, gulfs or bays". Assuming arguendo that Lake Maracaibo reasonably could be considered either a lake or a bay, we agree with the district court's construction of the policy language which is most favorable to An-Son. Holland-America drafted the policy. It could have included "lakes" within the exclusionary clause. It did not. It therefore must suffer the consequences.

### III.

The remaining question is whether it was proper for the district court to permit An-Son to recover its attorneys fees incurred in litigating the instant action.

■ The general American rule is that, absent a statute or an enforceable contract, litigants pay their own attorneys fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 257 (1975). In Oklahoma, there is such a recovery statute. 36 O.S. § 3629(B) (1981) provides:

"B. It shall be the duty of the insurer, receiving proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorneys fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in these cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. This provision shall not apply to uninsured motorist coverage."

Holland-America argues that this statute refers only to so-called "first party" actions where the insured has sustained a loss and the insurer rejects a claim made under the policy, but not to actions seeking indemnity or a declaratory judgment, as here. Holland-America has failed to cite a single Oklahoma case which so holds, and we have found none.

Those Oklahoma cases which have interpreted § 3629(B)—all "first party" actions—appear to have given the statute a broad reading. In *McCorkle v. Great Atlantic Insurance Co.,* 637 P.2d 583, 586 (Okla.1981), the Supreme Court of Oklahoma simply stated that the "award of attorney fees to the prevailing party in a suit by an insured against the insurer is provided for by statute in Oklahoma." In *Shinault v. Mid-Century Insurance Co.,* 654 P.2d 618, 619 (Okla.1982), the court interpreted § 3629(B) as qualifying those conditions under which an *insurer* may recover attorneys fees, i.e. where the insurer is the prevailing party. The insurer is the prevailing party where the judgment is for less than any settlement offer that was tendered to the insured, or where the insured rejects the claim and no judgment is awarded. Such a reading is consistent with the language of § 3629(B), which goes on to state that "[i]n *all* other judgments the insured shall be the prevailing party." (emphasis added). There is no question that An-Son was the prevailing party in the instant action.

Holland-America has cited several cases from other jurisdictions which deny an in-

sured's recovery of attorneys fees in indemnity or declaratory judgment actions. We do not find these cases to be controlling here. The Oregon statute referred to in *Kricor, Inc. v. General Accident, Fire & Life Assurance Corp.*, 542 F.2d 1135, 1136–37 (9th Cir.1976), which permits an insured to recover attorneys fees *only* where a recovery obtained against the insurer is greater than any tender made by the insurer, is narrower than the Oklahoma statute which specifies the conditions under which an insurer may recover fees and allows the insured to recover "in all other judgments". *Previews, Inc. v. California Union Insurance Co.*, 640 F.2d 1026, 1029–30 (9th Cir.1981), did not involve a statutory authorization for the recovery of attorneys fees. *Shepard v. Millbank Mutual Insurance Co.*, 579 F.2d 477, 480 (8th Cir.1978), involved a South Dakota statute which, unlike the Oklahoma statute here involved, allowed recovery only where the insured was found to have acted vexatiously or without reasonable cause. *See also Farmers Casualty Co. (Mutual) v. Green*, 390 F.2d 188, 192 (10th Cir.1968) (interpreting Kansas statute which authorizes recovery only where insurer has wrongfully refused to pay). In *Mighty Midgets, Inc. v. Centennial Insurance Co.*, 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 1085, 416 N.Y.S.2d 559, 564 (1979), the New York Court of Appeals interpreted New York law in such a manner as to deny an insured's recovery of fees even in first party actions so long as it was the insured which brought the action to settle its rights.

The short of it is that there is a split of authority on the question of whether an insured can recover attorneys fees in a declaratory judgment or indemnity action. *See generally* 7C Appleman, Insurance Law and Practice § 4691 (1979). Appleman criticizes as unfair those decisions which deny recovery to an insured in such cases.

"After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts [which have denied recovery] should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses such action, compel him to bear the expense of such litigation, the insured is actually no better off financially then if he had never had the contract right mentioned above."

*Id.* at § 4691, p. 283. This analysis strikes us as sound and persuasive. We believe that the courts of Oklahoma would agree.

■ In its May 11, 1983 order granting An-Son's motion for attorneys fees, after examining the Oklahoma cases referred to above, the district court stated that it could find no reason to differentiate between first party actions and actions such as the instant one. We agree with the district court. Moreover, the views of a federal district judge who is a resident of the state where the controversy arises in a case involving interpretation of state law carry particular force on appeal where there are no state decisions in point or none which provides a clear precedent. *Volis, supra*, 548 F.2d at 901.

■ We hold that An-Son, as the prevailing party pursuant to 36 O.S. § 3629(B) (1981), is entitled to recover its attorneys fees in this action.

### IV.

We hold that Holland-America breached its duty to defend An-Son under its contract of insurance, and that An-Son is entitled to recover its attorneys fees in the instant action.

Affirmed.