875 F.2d 1460
 Ernest Dale THOMPSON and Kelly Thompson, husband and wife;
and Ernest Dale Thompson, father, guardian, and
next friend of Jason Thompson, a minor,
Plaintiffs-Appellees,
v.
SHELTER MUTUAL INSURANCE, a Missouri corporation, Defendant-Appellant.
 Nos. 85-1960, 85-2189.
 United States Court of Appeals,
Tenth Circuit.
 May 22, 1989.
 
 Joseph F. Clark, Jr., of Williams, Clark, Baker & Earl, Tulsa, Okl., for defendant-appellant.
 Richard E. Elsea (Kevin A. Schoeppel with him, on the briefs) of Schoeppel, McAtee & Elsea, Tulsa, Okl., for plaintiffs-appellees.
 Before LOGAN, BARRETT and MOORE, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 The dwelling and personal property of the family of Ernest Dale Thompson (collectively Thompson) were covered by a fire insurance policy issued by Shelter Mutual Insurance Co. (Shelter) when an arson fire damaged the property. Shelter admitted coverage under the policy, but only provided $500 of additional living expense money to Thompson immediately after the fire--enough for one month's subsistence--plus another $1500 about five and a half months later. The policy had a limit of $5,000 on additional living expense payments. Shelter also disputed the amount of Thompson's claim, and Thompson refused to accept the estimates of Shelter's contractors as the basis for a settlement.
 
 
 2
 Eventually, Thompson brought this diversity suit against Shelter, alleging breach of contract, intentional infliction of emotional distress, and bad faith conduct by Shelter. The case was tried to a jury, which awarded Thompson damages of $35,000 for dwelling repair, $27,500 for personal property damage, and $3,000 for additional living expenses. The jury found no intentional infliction of emotional distress, but awarded Thompson $29,500 damages on the bad faith claim. The district court also awarded Thompson attorney's fees.
 
 
 3
 In these consolidated appeals, Shelter argues that (1) the evidence was insufficient to submit the claim of bad faith to the jury, (2) there was insufficient evidence to support the jury's awards for dwelling repair and personal property damage, and (3) the fee awarded to Thompson's attorneys was erroneous. We affirm, except that we condition affirmance of the personal property award on a partial remittitur of it.
 
 
 4
 * Under Oklahoma law, which the parties agree controls this case, every insurance contract contains an implied duty of good faith and fair dealing. See, e.g., Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 914 (Okla.1982). The insurer does not breach this duty by refusing to pay a claim or by litigating a dispute with its insured if there is a "legitimate dispute" as to coverage or amount of the claim, and the insurer's position is "reasonable and legitimate." Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla.1984); see also Christian v. American Home Assurance Co., 577 P.2d 899, 903-04 (Okla.1978). Rather, to prove a breach of the duty of good faith and fair dealing the insured must show by a preponderance of the evidence that the insurer failed to treat the insured fairly or that it tried to make the insured "surrender his policy or disadvantageously settle a nonexistent dispute." Fletcher v. Western Nat'l Life Ins. Co., 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 92 (1970), quoted in Christian, 577 P.2d at 901; see also Timmons, 653 P.2d at 913. Viewing the evidence in the light most favorable to the plaintiff, as we must, McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 586 (Okla.1981), we hold that Thompson's evidence meets the minimum standard necessary for submission of the question of bad faith to the jury and to support the jury's finding for Thompson.
 
 
 5
 Thompson introduced evidence that Shelter's adjuster tried to intimidate Thompson when investigating the fire, that Shelter refused to give Thompson a copy of his current declaration sheet, that Shelter refused to pay Thompson sufficient living expense money even though Shelter admitted coverage and knew that Thompson would need approximately three to five months of additional living expense money while the house was repaired, that Shelter refused to negotiate with Thompson's agent, and that Shelter unreasonably rejected Thompson's proof of loss forms. Although the focus of the bad faith claim was on the failure to pay additional living expenses, all this evidence is probative and relevant because "the jury may be shown the entire course of conduct between the parties to arrive at a determination of whether [the good faith] standard had been breached or not." Timmons, 653 P.2d at 917.
 
 
 6
 Shelter asserts that it could not have acted in bad faith because it had no duty to pay any living expense money until the parties agreed upon Shelter's liability for repair costs, and, because the district court found a bona fide dispute between the parties as to such costs, Shelter's refusal to make the living expense payments was reasonable and in good faith as a matter of law. This argument does not impress us, first, because the jury was entitled to consider conduct other than the withholding of living expenses as evidence of Shelter's bad faith. Also, "[u]nwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy." Christian, 577 P.2d at 903. This especially is true with additional living expense payments, the function of which is to enable the insured to maintain, insofar as possible, the pre-fire standard of living during the period of repair and replacement. An unresolved dispute as to other policy claims does not as a matter of law excuse the failure of the insurer to pay living expense benefits, when the liability for such benefits is undisputed. The evidence presented was sufficient to create a jury question on bad faith. See McCorkle, 637 P.2d at 587 (if there is conflicting evidence regarding reasonableness of conduct, question of bad faith is for jury); see also Buzzard v. McDanel, 736 P.2d 157, 159 (Okla.1987).
 
 II
 
 7
 Shelter also argues that the dwelling repair and personal property awards were not supported by competent evidence. As for the dwelling repair award of $35,000, competent testimony indicated that the dwelling damages totalled approximately $47,000, see IV R. 293-94; plaintiffs' exhs. C-8, N-1, and that the lower estimates offered by Shelter did not cover particular repairs or were unreasonably low and designed by the contractor to gain entry into the insurance repair business. IV R. 168-69, 173; VI R. 801-02. Thus, the award given was within the parameters of the testimony and supported by competent evidence.
 
 
 8
 The award of $27,500 for personal property damage, however, is excessive. The proofs of loss detailed personal property with a value of $22,419.21, and Thompson at no time proved or even argued for a personal property award greater than this amount. See IV R. 293-94; VII R. 844; plaintiffs' exhs. C-8, N-1. Thompson attempts to justify the jury's larger award, which equals the policy limits on personal property, by pointing to photographs introduced as evidence that show the fire damage to the home. Shelter argues that the figure on the proof of loss forms must be depreciated since it is apparent that the figure represents the purchase price of the personal property, while the policy provides only for reimbursement of the property's actual value at the time of loss. Both arguments must fail. It is true that Thompson's policy was for actual value, not replacement cost. Yet, Shelter's only specific evidence about depreciation on Thompson's property was a "guess" by one of its employees as to the proper amount of the total personal property award. VI R. 632; cf. plaintiffs' exh. J-17. To reduce Thompson's award based on this testimony would sanction an award based on "mere speculation, conjecture or surmise" which, of course, is improper. Great W. Motor Lines, Inc. v. Cozard, 417 P.2d 575, 578 (Okla.1966). Similarly, a valuation of more than $22,419.21 would be based on nothing more than a guess about the damage depicted in the photographs. When the damages awarded are unsupported by competent evidence, we may order the plaintiff to remit the amount above that which is supported by the evidence. Davon Drilling Co. v. Ginder, 467 P.2d 470, 474 (Okla.1970). Thus, we order a remittitur of $5,180.79 ($27,500.00 less $22,419.21 proved value, plus the policy's $100.00 deductible) of the personal property award, and condition affirmance of the award of $22,319.21 upon Thompson's agreement to the reduction. In the absence of such agreement, Shelter is entitled to a new trial on the issue of the amount of Thompson's personal property damages.
 
 III
 
 9
 In Oklahoma, an insured may recover costs and attorney's fees incurred in suing the insurer if the judgment recovered exceeds all written settlement offers made by the insurer. Okla.Stat. tit. 36, Sec. 3629(B). Shelter concedes that Thompson is entitled to a fee award because the verdict in the instant case exceeded any written settlement offer it made.
 
 
 10
 Thompson's attorneys petitioned for fees totalling $94,212.24, which they calculated based on 716.85 hours of preparation time at $85 an hour and 115.5 hours of trial time at $125 per hour, plus a twenty-five percent enhancement. In addition, they asked for reimbursement of $1,615.55 in expenses. The district court awarded expenses in the amount claimed. The court, however, found that only 350 hours of preparation time and 50 hours of trial time were reasonably expended, and that this time should be compensated at $85 and $110 per hour, respectively. Thus, it awarded a fee of $35,250. The court also refused to segregate the fees and award only those attributable to the contract claim, holding that no clear delineation could be made between the time spent on the contract claim and the tort claims.
 
 
 11
 Shelter does not challenge the expense award or the district court's setting of $85 and $110 per hour as reasonable rates of compensation. Nevertheless, Shelter argues that the $35,250 fee is erroneous for two reasons. First, it asserts that the attorneys' time spent preparing and trying the bad faith claim is not compensable under the statute, and the court should have segregated and disallowed the time spent on that claim. Second, Shelter argues that the court's award is not supported by evidence introduced at the fee hearing. We reject both contentions.
 
 
 12
 Even if Shelter is correct that some delineation could rationally be made in this case between time spent on the contract and the tort claims, see Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983), such a determination would be irrelevant in this case because we hold that Sec. 3629(B) allows fees for time spent preparing and trying a claim of bad faith, provided the plaintiff succeeds on his claim of bad faith and also meets the statutory requirement of obtaining a total judgment larger than the greatest settlement offer made by the insurer. The American rule that generally prohibits the award of attorney's fees to the prevailing party does not apply when a statute, here Sec. 3629(B), provides for the award of fees. An-Son Corp. v. Holland-America Ins. Co., 767 F.2d 700, 703 (10th Cir.1985). We have noted that Oklahoma's courts have read this statute broadly, see id., and find no indication in the statute that an insured who otherwise qualifies as a "prevailing party" should not be allowed fees for attorney time spent successfully prosecuting a claim of bad faith. Indeed, it would be anomalous to read Sec. 3629(B) to allow fees for the prosecution of a suit when the insurer had acted reasonably, albeit erroneously--with the insured obtaining a judgment greater than the largest settlement offer--while denying fees to a plaintiff who successfully sued an insurer to redress unreasonable or oppressive conduct and obtained a judgment greater than any settlement offer.
 
 
 13
 In addition, the Oklahoma Supreme Court has upheld the award of fees under Sec. 3629(B), without mentioning their segregation between tort and contract claims, in cases in which the plaintiffs recovered both for breach of contract and for bad faith conduct. See McCorkle, 637 P.2d at 586; Oliver's Sports Center, Inc. v. National Standard Ins. Co., 615 P.2d 291, 295 (Okla.1980). In Oliver's Sports, the court specifically mentioned the attorneys' efforts in trying a complicated bad faith suit. Id.
 
 
 14
 Shelter's argument that the district court's actual fee award is unsupported by the evidence similarly is without merit. As a matter of Oklahoma law, the district court's award of an attorney's fee must be upheld if reasonable, and can be modified or vacated only if the court has abused its discretion. Southwestern Bell Tel. Co. v. Parker Pest Control, Inc., 737 P.2d 1186, 1189 (Okla.1987). We find no such abuse here. Thompson's attorneys claimed a total of 832.35 hours of compensable time, but the court awarded fees for only 400 hours, citing as some of the reasons for its reduction the inexperience of Thompson's attorneys, excessive time spent in research and preparation, unreasonable client demands that more experienced counsel could have squelched, and time spent preparing meritless claims. The district court carefully followed the rationale of this court in Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983), and that of the Oklahoma Supreme Court in State ex rel. Burk v. City of Oklahoma City, 598 P.2d 659 (Okla.1979), in considering the relevant factors and determining a reasonable fee. Its decision is supported by the evidence and we find no abuse of discretion.
 
 
 15
 The judgment is AFFIRMED in all respects, except as to the award of personal property damages, to which we attach the condition of a remittitur reducing the judgment to $22,319.21. If Thompson agrees to the remittitur, then that award also is AFFIRMED. If not, Shelter is entitled to a new trial limited to the issue of the amount of Thompson's personal property damages.
 
 
 16
 IT IS SO ORDERED.