**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 9 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

ROBERT E. STAUTH, HARRY L.
WINN, KEVIN J. TWOMEY,
DONALD N. EYLER, R. RANDOLPH
DEVENING, JAMES E. STUARD and
FLEMING COMPANIES, INC.,

    Plaintiffs-Appellants,

    v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH and FEDERAL
INSURANCE COMPANY,

    Defendants-Appellees.

No. 98-6405

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-96-1825-M)**
_____

Submitted on the briefs:

    John N. Hermes and Myrna S. Latham of McAfee & Taft, Oklahoma City, Oklahoma, for Plaintiff-Appellants.

    Gerald P. Green, Frances E. Patton, Haven Tobias, and Pierce C. Hendrickson of Baysinger & Green, Oklahoma City, Oklahoma for Defendant-Appellee Federal Insurance Company; James M. Peters of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Oklahoma for Defendant-Appellee National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

Before **BALDOCK** and **McWILLIAMS**, Circuit Judges, and **SHADUR**, District Judge.[*]

_____

**SHADUR**, District Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  Accordingly the case has been ordered submitted without oral argument.

This appeal poses the question of the recoverability of attorneys' fees and expenses incurred by Fleming Companies, Inc. ("Fleming") and a number of its officers and directors--Robert Stauth, Harry Winn, Kevin Twomey, Donald Eyler, Randolph Devening and James Stuard--in connection with their institution and successful prosecution of a declaratory judgment action to resolve the question of which of two sets of director and officer executive liability policies covered them.[1]  Fleming's fee request was denied by the district court on the premise that 36 Okla. Stat. §3629(B) ("Section 3629(B)") requires the submission of a "proof of loss" in support of such a request and no document fitting that term in the usual sense had been tendered by Fleming.  Fleming has appealed the district

_____

[*]     The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

[1]     For simplicity we will also refer to appellants collectively as "Fleming," treated as a singular noun.  That dual usage should not create any confusion, because the context will clearly show whether the name is being used to denote the corporation alone or all of the appellants.

court's denial of attorneys' fees.

We conclude that Section 3629(B) applies to declaratory judgment actions such as that brought by Fleming, and we also hold that Fleming complied fully with its contractual obligations under the insurance policies involved so as to satisfy the statutory requirements. We further hold that under the circumstances an award of attorneys' fees is mandatory under Section 3629(B). We therefore REVERSE and REMAND this action to the district court, directing it to award Fleming its attorneys' fees and expenses associated with the declaratory judgment action.

Background

In 1993 Fleming purchased two directors and officers ("D and O") liability policies (the "1993 Policies")--one from Federal Insurance Company ("Federal") providing basic coverage and the other from National Union Fire Insurance Company ("National Union") providing excess coverage (we refer to Federal and National collectively as "Insurers"). In 1996 Fleming renewed these two policies ("the 1996 Policies"[2]).

Between March and June 1996, Fleming shareholders and noteholders filed ten different class actions against Fleming, all alleging its violation of the federal

---

[2]     Because Federal's policies contain the substantive provisions while National Union's is a following form, we will use the singular term "1996 Policy" when we hereafter discuss the provisions of Federal's later policy (which, it should be said, are no different substantively from its 1993 Policy).

securities laws by having failed to disclose the existence of litigation that began in 1993 and settled in 1996. Those multiple actions were eventually consolidated into two actions ("the Class Actions"), one by Fleming's noteholders and the other by its shareholders. Fleming notified Insurers of the existence of the Class Actions and provided them with copies of the complaints.

As we discuss at greater length later, such submission of the complaints was all the notice that the 1996 Policies required of Fleming for it to become entitled to policy coverage and to bring an appropriate action against Insurers if need be. Indeed, by contrast with other types of coverage provided by the multiperil 1996 Policy, the relevant provision for D and O coverage did not require Fleming to submit a "proof of loss."

In October 1996 Fleming filed a declaratory judgment action against Insurers, seeking a determination that they had a duty to indemnify Fleming in the Class Actions under the 1996 Policies. Although Insurers agreed to cover Fleming, they contended that it was covered under the 1993 Policies and not the 1996 Policies. That made a real world difference: Because part of the coverage afforded by the 1993 Policies had already been exhausted, more coverage was available to Fleming under the 1996 Policies. Fleming also raised a separate issue in the declaratory judgment action as to what rule--"larger settlement" or "relative exposure"--controlled the allocation of coverage between insureds and

non-insureds.

On November 12, 1997 the district court ruled that the 1996 Policies rather than the 1993 Policies provided coverage for the Class Actions. On the other disputed issue, the district court ruled that the "larger settlement" rule of allocation controlled. Insurers then appealed the district court's judgment.

On appeal a panel of this Court affirmed the holding that the 1996 Policies provided coverage but vacated the trial court's ruling on allocation as premature (Stauth v. National Union Fire Ins. Co., 185 F.3d 875 (10th Cir. 1999) (Table), available at 1999 WL 420401, at *1). For that reason the panel directed the district court to hold the case in abeyance until the underlying lawsuits were resolved (id. at *15). Because that has not yet occurred, no liability to the Class Action plaintiffs has been suffered to this point, although Fleming has of course incurred the expense of this litigation while Insurers have been providing the defense in the underlying Class Actions.

Meanwhile, some two weeks after the district court's November 12, 1997 ruling on the coverage and allocation issues, Fleming filed a motion for attorneys' fees pursuant to Section 3629(B). As stated earlier, this appeal has been taken from the district court's denial of that motion.

<u>Section 3629(B) and the Standard of Review</u>

Section 3629(B) provides in relevant part:

It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured party within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where the judgment does not exceed the written offer of settlement. In all other judgments the insured party shall be the prevailing party.

Before us the parties have raised several issues as to that statute's interpretation and applicability. We address those issues in this order:

1. whether Section 3629(B) applies to Fleming's declaratory judgment actions;

2. whether the absence of a conventional formal proof of loss is fatal to Fleming's request for attorneys' fees;

3. whether Fleming was a "prevailing party" under Section 3629(B); and

4. whether an award of attorneys' fees to the prevailing party is mandatory under that statute.

Despite the general rule that the standard of review for a denial of attorneys' fees is an abuse of discretion standard (see, e.g., <u>Mann v. Reynolds</u>, 46 F.3d 1055, 1062 (10th Cir. 1995) and cases cited there), in this instance the district court did not exercise any discretion because it based its decision on its

reading of Section 3629(B) as requiring a proof of loss as a matter of law. Because the parties' dispute is not as to the underlying facts but rather as to the proper application of Section 3629(B), we conduct our review of the district court's statutory interpretation under a de novo standard (Ward v. Allstate Ins. Co., 45 F.3d 353, 354 (10th Cir. 1994)).

<u>Application of Section 3629(B) to Declaratory Judgment Actions</u>

As an initial matter we must determine whether Section 3629(B) operates at all in this type of action:  a declaratory judgment proceeding concerned primarily with the preliminary question of which D and O policies (1993 or 1996) applied to Fleming's claim for coverage of the Class Action suits.  Fifteen years ago we gave an affirmative answer to the question of Section 3629(B)'s applicability to declaratory judgment actions seeking coverage under liability policies.  In <u>An-Son Corp. v. Holland-America Ins. Co.</u>, 767 F.2d 700 (10th Cir. 1985) an insured party had requested that its liability insurer defend it in a personal injury action (<u>id</u>. at 701-02).  After the insurer rejected the claim and the insured provided its own representation, it brought suit under Section 3629(B) to recover its expenditures, alleging that the insurer had breached its duty to defend  (<u>id</u>. at 702).

In concluding that the statute did apply to such actions, <u>An-Son</u>, 767 F.2d at 703 first observed that the Oklahoma courts interpreted the statute broadly,

citing Shinault v. Mid-Century Ins. Co., 654 P.2d 618, 619 (Okla. 1982). Next the opinion emphasized that the statute declared an insured to be the prevailing party in "all" judgments other than in a specific and limited category of cases (id.). Finally, after noting a split of authority on the question whether an insured can recover attorneys' fees incurred in a declaratory judgment or indemnity action, Anson, id. at 704 expressed the belief that the Oklahoma Supreme Court would find persuasive this argument set out in 7C John Appleman, Insurance Law and Practice §4691, at 283 (1979):

> After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts [which have denied recovery] should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses such action, compel him to bear the expense of such litigation, the insured is actually no better off financially then [sic] if he had never had the contract right mentioned above.

We adhere to the An-Son precedent and its line of analysis to hold that Section 3629(B) applies here. For its part, Federal attempts to escape that result by urging that because this case involves indemnity rather than the defense of litigation, the An-Son rationale does not support the award of attorneys' fees to Fleming. But Federal's attempt thus to distinguish An-Son fails for two reasons.

First, Federal ignores An-Son's explicit rejection of the contention that

-8-

Section 3629(B) applies "only to so-called 'first party' actions where the insured has sustained a loss and the insurer rejects a claim made under the policy, but not to actions seeking indemnity or declaratory judgment, as here" (767 F.2d at 703). In thus distinguishing actions involving indemnity from those involving first-party insurance (while still holding Section 3629(B) applicable to both types of action), An-Son clearly used the word "indemnity" in its broad sense of insurance providing third-party coverage, including both the duty to defend and the duty to indemnify.

Second, nothing in An-Son limits its analysis to the duty to defend. We can discern no principled reason why Section 3629(B) should be operative where the duty to defend is at issue, but not where the issue is the duty to indemnify. Surely the Appleman argument approved in An-Son applies with equal force to both situations, for it is founded on compelling an insurer to bear the consequences of its improper denial of the insured's right to coverage. Any such improper denial forces the insured to litigate the coverage issue and to incur the corresponding expenses of litigation, or else to forgo its right to coverage. As Appleman explained, requiring the insured to bear the litigation expenses defeats the purpose for which the insured purchased the insurance policy--to provide financial protection. We therefore reject Federal's attempt to distinguish An-Son.

Federal has also advanced a second argument for avoiding Section 3629(B):

It says that it did provide coverage to Fleming (while also advancing the costs of defending the underlying litigation), so that Fleming was never denied any benefits and has not sustained any injury. But that ignores the critical fact that Federal turned down Fleming's claim to coverage under the 1996 Policy. Because Fleming had more coverage available to it under that policy than remained available under the 1993 Policy, Federal's turndown forced Fleming to institute a declaratory judgment action to determine its rights under the 1996 Policy. With that added contention on Federal's part having proved empty as well, we adhere to our determination that Section 3629(B) applies to this case.

### Terms of the 1996 Policy

We now turn to the district court's order denying attorneys' fees and costs to Fleming. In reaching that result the district court held that Section 3629(B) requires submission of a proof of loss and noted that neither party disputed the absence of such a submission. It is of course odd to speak of "proof of loss" in the ordinary formal sense in this kind of action, as contrasted with a first-party action of the type referred to earlier (where the insured has sustained a loss and seeks reimbursement from its insurer). After all, where coverage is at stake and the insured is forced to bring suit to establish its right to such coverage, the loss inheres in having to incur the expense of the lawsuit itself (most importantly in incurring attorneys' fees), so that the proof that such loss is being incurred is the

-10-

very bringing of the lawsuit (of which, needless to say, the insurer is given notice at its very outset). It is scarcely surprising, then, that (as will be seen) the parties agreed under the relevant terms of the policies at issue here that written notice of the underlying D and O claim would be all that was required of Fleming to trigger the insurers' obligations.

Before we embark on that discussion, though, it is worth noting that there are no appellate precedents that deal with the question whether in this type of situation (the declaratory judgment action seeking coverage, where we have just explained that a "proof of loss" in the usual sense would be an anomaly) the submission of a separate proof of loss is required by Section 3629(B). Only one Oklahoma case-- Shadoan v. Liberty Mut. Fire Ins. Co., 894 P.2d 1140, 1144 n. 9 (Okla. Ct. App. 1995)--speaks of the Section 3629(B) requirements, and its footnote listing proof of loss as one of three elements for obtaining recovery was written in connection with a first-party action. As for the only prior case from this Court--an unpublished disposition in Western Farmers Elec. Coop. v. St. Paul Ins. Co., 134 F.3d 384 (10th Cir. 1998) (Table), available at 1998 WL 43168, at *2-*3 (10th Cir.)--that order adverted briefly to a proof-of-loss requirement, but that reference was not made in the context of a declaratory judgment action such as that involved here.

But suppose that it were to be assumed that a "proof of loss"--one of the

type appropriate to the kind of claim at issue here--were indeed required to trigger the operation of Section 3629(B) as between Fleming and Insurers. Our examination of the terms of the 1996 Policy compels the conclusion that Fleming's notification to Insurers of the existence of the Class Actions, followed by the institution of the declaratory judgment action when coverage under the 1996 Policies was denied, would be all that was necessary to satisfy a "proof of loss" requirement.

We begin with Section 8 of the "General Terms and Conditions" section of the 1996 Policy, which in relevant part states simply, "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy." As stated earlier, the 1996 Policy is one covering a host of perils, one of which--the "Executive Liability and Indemnification" (D and O) provision--is implicated here. And its statement of what Fleming had to do to obtain D and O coverage reads simply in its Section 10, the Reporting and Notice provision as to that coverage:

> The Insureds shall, as a condition precedent to exercising their rights under this coverage section, give to the company written notice as soon as practicable of any Claim made against any of them for a Wrongful Act.

As is entirely understandable in light of the nature of the coverage involved, not a word is said in that Reporting and Notice provision about a "proof of loss" as a precondition to coverage. All that was required was written notice, which

-12-

Fleming provided by advising Insurers of the Class Actions and providing them with copies of the underlying complaints.

By sharp contrast, the parties themselves have confirmed that they knew full well how to require Fleming as a party insured to provide a "proof of loss" in the conventional sense when that was an essential condition of coverage. As to other types of perils covered by the 1996 Policy--types where a third party had caused a quantified loss to the Insured, which then asserted a first-party claim to be made whole by the Insurer--the 1996 Policy expressly required a "proof of loss" as conventionally understood. Thus under Section 22 of the "Crime Insurance" provision the 1996 Policy required among other things:

> Within four months after such discovery [of loss or an occurrence that may become a loss] the Insured shall furnish to the Company affirmative proof of loss with full particulars.

Having thus expressly demanded a proof of loss as a precondition to certain classes of coverage while conspicuously omitting any such requirement for the D and O coverage whose denial spawned this litigation, Federal (and hence National Union under its following form of policy) cannot in good conscience urge such a proof of loss as a requirement in the formal sense--a sense that does not fit Fleming's claim here. Instead we hold that if Section 3629(B) does require a "proof of loss" as a price for bringing into play the other portions of that statute awarding attorneys' fees and costs to the "prevailing party" and then defining the

-13-

latter term, Federal's own 1996 Policy confirms that the assumed "proof of loss" requirement was satisfied by Fleming notifying the Insurers about the Class Actions, followed by its compelled institution of the declaratory judgment action.

<u>Fleming as a "Prevailing Party" under Section 3629(B)</u>

That then leads to the question whether Fleming was a "prevailing party" under Section 3629(B), which requires such status as the basis for an award of attorneys' fees and costs (see <u>Shinault</u>, 654 P.2d at 619). <u>Shinault, id</u>. echoes the statutory definition under which the insured is the prevailing party unless the insurer has made a settlement offer and there is a subsequent judgment for a lesser amount--an exception that is of course inapplicable where the insured is hit with a judgment after the insurer has rejected the claim. This litigation is obviously outside of the narrow confines of that exception: Fleming has itself obtained a judgment confirming its coverage under the 1996 Policies after Insurers had rejected Fleming's claim to coverage under those policies. Under the statute that made Fleming the "prevailing party."

Although Insurers attempt to counter that the "judgment" spoken of in Section 3269(B) has to be an actual adjudicated recovery, in a sense that brings the analysis full circle to the already-decided proposition that Section 3629(B) applies to declaratory judgment actions. Any notion that an actual adjudicated recovery was required by the statute would be inconsistent with our decision as to

declaratory judgment actions, originally reached in <u>An-Son</u> and adhered to here. Moreover, nothing either in the language of Section 3629(B) or in the <u>Shinault</u> opinion supports Insurers' claim that a dollar recovery is essential for the attainment of prevailing party status in the current context.

Insurers also contend that the pending allocation issue must be resolved before Fleming can be deemed a prevailing party. That contention lacks merit, because no resolution of the issue would negate the vital victory as to coverage under the 1996 Policies that Fleming won in the declaratory judgment action--at worst the later determination could only reduce the amount of coverage available. In sum, we conclude that Fleming's upheld judgment in the declaratory judgment actions makes it the prevailing party entitled to recover attorneys' fees and costs under Section 3629(B).

<u>Mandatory Nature of Fleming's Award</u>

We turn finally to the question whether an award of attorneys' fees and costs is mandatory under Section 3629(B) where a prevailing party has met the statutory requirements. Because the district court had ruled against Fleming on the statutory coverage issue, it had no need to consider that added question. But the issue is one that the district court will necessarily face on remand, it poses a straight question of law capable of resolution here, and it has been posed to us by the parties. No useful purpose would be served by our eschewing the issue and

-15-

creating the potential for a second appeal, so we resolve it now.

Section 3629(B) says, "Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party." What is meant by the phrase "shall be allowable"?

Nearly a decade ago our Court, emphasizing the word "allowable," held that an award of attorneys' fees under Section 3629(B) is entirely discretionary (Adair State Bank v. American Cas. Co., 949 F.2d 1067, 1077-78 (10th Cir. 1991)). But post-Adair two separate intermediate Oklahoma Courts of Appeals have read Section 3629(B) differently--each case holds that an award of attorneys' fees is mandatory upon compliance with the statute (Shadoan, 894 P.2d at 1143-44 and Williams v. Old Am. Ins. Co., 907 P.2d 1105, 1107 (Okla Ct. App. 1995)). Both of those decisions view "shall" as the operative word in the phrase and, pointing to Oklahoma Supreme Court authority holding "shall" to be "a word of command or mandate, with a compulsory and peremptory meaning," reason that the Oklahoma legislature would have used the word "may" if it had intended a fee award to be discretionary.

As a federal court sitting in diversity of citizenship litigation, our duty under Erie v. Tompkins principles is of course to conform to Oklahoma's substantive law. And in the absence of definitive direction from the Oklahoma Supreme Court, that calls for us to predict the course that body would take if

-16-

confronted with the issue (Fransen v. Conoco, Inc., 64 F.3d 1481, 1492 n.10 (10th Cir. 1995)).

In this instance we address the special variant under which principles of stare decisis call for any panel of this Court to follow an earlier panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state law (Koch v. Koch Indus., Inc., 203 F.3d 1202, 1231 (10th Cir. 2000)). Here such a supervening declaration has been made by two separate intermediate Courts of Appeals in Oklahoma, each of which has given thoughtful consideration to our Adair decision but has come out the other way, ruling that Section 3629(B) makes an award of attorneys' fees mandatory. Although those opinions do not come within the category that is accorded precedential value under Oklahoma law, instead being "considered to have persuasive effect" (Okla. Stat. tit. 12, ch. 15, app., Okla. S.Ct. Rule 1.200(c)(2)), so that we are not absolutely bound by those decisions in determining Oklahoma law (Fransen, 64 F.3d at 1492 n.10), such decisions by a state's intermediate appellate courts provide evidence of how the state's highest court would rule on the issue, and we can consider them as such (id.). Section 3629(B)'s "shall be allowable" language certainly presents an arguable question of interpretation of a state statute, and not one but two intermediate Oklahoma Courts of Appeals have considered our Court's reading and have found it

unpersuasive as to what Oklahoma law means.

On balance, we are inclined to follow the lead of those courts as to what their Supreme Court is more likely to do if confronted with the same issue. We therefore overrule that part of Adair that is inconsistent with this holding.[3] In conformity with Shadoan and Williams, we hold that an award to Fleming of attorneys' fees and costs under Section 3629(B) is mandatory.

## Conclusion

We REVERSE the order of the district court denying attorneys' fees and costs to Fleming and REMAND the case to the district court, directing it to award to Fleming the attorneys' fees and costs that it has incurred in the declaratory judgment action and its aftermath (including this appeal).

---

[3] This opinion has been submitted to the active judges of the Tenth Circuit and the Court has unanimously agreed en banc to the overruling of that part of Adair, as stated here.