**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 28 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MINTA COOPER,

        Plaintiff-Appellant,

v.

CENTRAL & SOUTHWEST
SERVICES,

        Defendant-Appellee.

No. 00-5168

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CV-830-B)**

---

Submitted on the briefs:

Jeff Nix, Tulsa, Oklahoma, for Plaintiff-Appellant.

Jon E. Brightmire and Kristen L. Brightmire of Doerner, Saunders, Daniel &
Anderson, L.L.P., Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **HENRY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

**MURPHY** , Circuit Judge.

---

This appeal [1] is taken from the district court's grant of summary judgment to defendant on plaintiff's claims of violations of the Americans With Disabilities Act, 42 U.S.C. § 12101-12213, wrongful discharge in violation of Oklahoma Public Policy based on her handicap, and retaliatory discharge in violation of Oklahoma's Workers' Compensation Act. She has properly appealed only her retaliatory discharge claim that her termination violated Okla. Stat. tit. 85, § 5. [2]

## Background

Because plaintiff does not challenge the district court's recitation of the facts, we summarize these from the district court's order granting summary judgment. Aplt. App., Vol. I at 3. Plaintiff was initially employed by defendant in 1994 starting as a programmer analyst. In March of 1996, she moved to the Human Resource Management Information Services group as a Human Resource Systems Analyst/Consultant. Aplt. App., Vol. I at 3-4. In December of 1996, she

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2] In her statement of issues presented for review, plaintiff lists the issue of whether she timely filed her discrimination charge under the ADA. The issue is not further argued, however, and we deem it waived. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (arguments inadequately briefed in opening brief are waived).

began to feel pain and discomfort in her hands; she filed her worker's compensation claim in April of 1997. *Id.* at 4. That June she discussed with her manager, Ms. Wilson, the fact that her hands were bothering her. *Id.* at 5. Plaintiff's request for a different keyboard was granted, but she neither received it nor followed up in obtaining it. *Id.* In July, plaintiff's earlier request to reduce her hours was granted, and she began a time-sharing job on July 27. *Id.* Throughout her previous employment with defendant it appears she had worked full time. On July 30, plaintiff underwent her first medical evaluation, at which time the workers' compensation claim physician, Dr. Watts, reported that the condition with her hands was likely related to repetitive keyboard activities at work. *Id.* Dr. Watts permitted plaintiff to continue working, but she did not return to work. In early August she obtained a note from Dr. Watts which took her off work until further notice. *Id.* at 5-6.

In October of 1997, plaintiff was released to work with the following restrictions: "No use of keyboard. Verbal training of new employees." *Id.* at 6. She returned on a restricted basis about the first of November. On November 5, Dr. Watts continued the restriction of not using the keyboard, but on December 10, he released her for one hour keyboarding per day, knowing she was working a four-hour day. *Id.*

About December 30, Ms. Wilson sent plaintiff a letter telling her not to report to work pending defendant's receipt of further medical information about her and her prognosis. *Id.* at 6-7. On January 7, 1998, Dr. Watts furnished a report expressing doubt plaintiff would be able to return to full, unrestricted duty as a Human Resource System Analyst/Consultant. He did think, however, that she might eventually be able to perform heavy keyboard usage half the time she was working. *Id.* at 7.

Ms. Wilson then contacted plaintiff asking her to identify potential accommodations that might permit her continued employment. *Id.* In March, the Human Resources manager sent plaintiff a letter confirming that she had been asked to suggest accommodations but had not provided any. *Id.* The letter further advised plaintiff that she was being placed on leave under the Family and Medical Leave Act (FMLA) and that she could return to her normal duties if her medical condition so warranted, or, alternatively she could seek another position within the organization. The letter signed off with the admonition that if, after the twelve-week leave period under FMLA, plaintiff was unable to return to her normal duties and had not found another position, she would be terminated. *Id.* at 7-8.

On March 30, Dr. Watts furnished another report in which he noted that plaintiff did not at that time intend to seek full time employment but might be

interested in returning to work without keyboarding restrictions to see if she could

manage. Dr. Watts thought it would not hurt to try that for several weeks and

offered to release her if she contacted his office. Plaintiff did not request

a release. *Id.* at 8.

Defendant terminated plaintiff on June 12, 1998. In the July 8 letter

confirming her discharge, defendant stated:

> Your employment ended as of June 12, 1998 because you did not
> return to your normal job duties and you were not placed on
> another position consistent with your physical condition and job
> skills.

Aplt. App., Vol. II at 212. At the time of her termination, plaintiff was receiving

temporary total disability (TTD) benefits under the Oklahoma Workers'

Compensation Act. *Id.*, Vol. I at 8.

Two months after her discharge, Dr. Watts reported that there was no

guarantee plaintiff would ever be able to return to repetitive stressful use of her

hands. At that time he placed her on permanent restrictions of avoiding repetitive

keyboard activities with a maximum of two hours in the morning and two in the

afternoon. *Id.* at 9. In October of 1998, an independent medical evaluator opined

that plaintiff's injuries were job-related and expressed the belief she could not

return to any type of job requiring repetitive use of her hands. [3] *Id.*

---

[3] Although the district court's order contains other findings, most concern

(continued...)

## Oklahoma's Workers' Compensation Act

The Oklahoma statute covering discharge of workers reads as follows:

### § 5.  Discharge of employee--Prohibited grounds

A. No person, partnership, corporation, or other entity may discharge, or, except for non-payment of premium, terminate any group health insurance of any employee because the employee has in good faith:

1.  Filed a claim;

2.  Retained a lawyer for representation regarding a claim;

3.  Instituted or caused to be instituted any proceeding under the provision of this title; or

4.  Testified or is about to testify in any proceeding under the provisions of this title which relates to the employee's past or present employment.

B. No person, firm, partnership, corporation, or other entity may discharge any employee during a period of temporary total disability solely on the basis of absence from work.

C. No person, firm, partnership, corporation, or other entity shall be required to rehire or retain any employee who is determined to be physically unable to perform assigned duties.  The failure of an employer to rehire or

---

[3](...continued)
her attempts to process a discrimination claim through the Equal Employment Opportunity Commission.  As such, they are not relevant to the issues in this appeal.

retain any such employee shall in no manner be deemed a violation of this section.

D. No person, firm, partnership, corporation, or other entity may discharge any employee because the employee has in good faith elected to participate or not to participate in a certified workplace medical plan as provided in Section 14 of this title.

Okla. Stat. tit. 85, § 5 (1998).

## Issue Presented

The issue presented both to the district court and on appeal to this court is whether an employer is shielded from liability under § 5.C for terminating an employee who at the time of discharge is unable physically to perform her assigned duties if at the time of termination that employee is absent from work while on TTD as described in § 5.B.

## District Court's Ruling

The district court's analysis contains a general discussion of the elements needed to prove a prima facie case of retaliatory discharge, which are (1) employment, (2) on-the-job injury, (3) medical treatment putting the employer on notice that treatment has been rendered for a work-related injury, and (4) consequent termination. *See Buckner v. Gen. Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988); *see* Aplt. App., Vol. I at 14. Noting that only the fourth element was at issue, the court held that the mere fact that plaintiff's termination

occurred after she had filed a worker's compensation claim was not dispositive.

In order to show "consequent termination," a plaintiff must "produce evidence

that gives rise to a legal inference her firing was 'significantly motivated' by

retaliation for filing the claim." *Taylor v. Cache Creek Nursing Ctrs.*, 891 P.2d

607, 610 (Okla. Ct. App. 1994) (citing *Wallace v. Halliburton Co.*, 850 P.2d 1056

(Okla. 1993)).

Neither Oklahoma cases nor this court's cases addressing alleged retaliation

for filing a worker's compensation claim, are directly relevant to the question at

hand, however, because they involve § 5.A. *See, e.g*., *Cache Creek*, 891 P.2d at

609-10; *Blackwell v. Shelter Mut. Ins. Co.*, 109 F.3d 1550 (10th Cir. 1997).

Plaintiff in this case is not alleging retaliatory discharge for exercising a right

under § 5.A but rather discharge in violation of § 5.B.

The district court also relied on its own earlier decision, affirmed by this

court in *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1111 (10th Cir. 1999), finding

that "[p]laintiff, while remaining on temporary total disability, advised

[defendant] he would *never* be able to return to his route driving job," a fact

subsequently confirmed by his doctor. Accordingly, the court concluded that

plaintiff had not established that he was terminated solely based on his absence

from work.[4] Here the district court held that plaintiff "had been given ample opportunity to heal," Aplt. App., Vol. I at 16, and that "continuation of TTD does not, in fact, provide an absolute right to continued employment." *Id.* at 17. Thus, the court concluded that even though plaintiff was receiving TTD at her termination, "the facts of this case fall within an exception to the absolute prohibition seemingly afforded by the provisions of § 5.B." *Id.*

## Review Principles

"'It is the duty of the federal appellate courts, as well as the trial court to ascertain and apply the state law where . . . it controls decision.'" *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 477-78 (10th Cir. 1990) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944). This court must therefore "ascertain and apply Oklahoma law with the objective that the result obtained in federal court should be the result that would be reached in an Oklahoma court." *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). In so doing, "we must apply the most recent statement of state law by the state's highest court." *Id.* at 513. We review

---

[4] The district court further stated that its decision underlying *Taylor* had applied the reasoning set forth in *Grimes v. Janesville Products*, Nos. 95-6439, 95-6460, 96-6002, 1997 WL 183547 (10th Cir. April 15, 1997) (unpublished disposition). This court's interpretation of *Grimes* differs from that of the district court. *See infra*, pp. 20.

the district court's interpretation of state law de novo, *see Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

It is also incumbent for a panel of this court "to follow an earlier panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state law." *Stauth v. Nat'l Union Fire Ins. Co.*, 236 F.3d 1260, 1267 (10th Cir. 2001) (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000)). The crux of this case requires this panel to analyze the guiding precedent in this circuit and determine whether the Oklahoma Supreme Court has issued a supervening declaration to the contrary.

## Circuit Precedent

In *Wiles v. Michelin North America, Inc.,* 173 F.3d 1297 (10th Cir. 1999), the first precedential case to address the interplay between the provisions of § 5.B and § 5.C,[5] the plaintiff, a Michelin employee, was injured in a work-related accident and commenced worker's compensation proceedings; he was then placed on TTD. *Id.* at 1298. Michelin's medical leave policy provided that the

---

[5] *Wiles* involved the 1992 version of the statute, which used different alphabetical and numerical designations for the current §§ 5.B and C. Section 5 was again amended in 1998 to make minor wording and format changes and to add subsection D, all of which are inconsequential to our analysis. We will refer to the current version of § 5, using §§ 5.B and 5.C.

maximum duration for either medical absence or light duty assignment was twenty-four months. If the employee was unable to return to his former assignment or unable to bid on another, he would be terminated. *Id.* Mr. Wiles was terminated twenty-four months after his injury, while still receiving TTD compensation. *Id.* at 1298-99.

Mr. Wiles sued Michelin, claiming § 5.B "prohibits employers from discharging employees who are on temporary total disability solely because of absence from work." *Id.* at 1299. Michelin countered that Mr. Wiles had not been fired because of his absence, but because medical evidence showed Mr. Wiles had permanent injuries preventing him from performing his assigned duties. *Id.* Michelin further argued that the addition of § 5.B to the 1992 statute[6]

---

[6] Prior to 1992, § 5 read as follows:

**§ 5. Claim--Discharge of employee**

No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provision of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties.

In interpreting this statute, and specifically in responding to a certified question as to whether a worker on a TTD leave of absence could be terminated for the sole reason that he was physically unable to perform his job, the Oklahoma

(continued...)

-11-

did not affect "an employer's ability to discharge an employee for the reason set forth in § 5[.C]." Michilen moved for summary judgment, claiming the undisputed evidence showed Mr. "Wiles' injuries prevented him from doing his assigned duties at the time of his termination," and that Michelin was therefore shielded from liability by § 5.C. *Id.*

Mr. Wiles both disputed Michelin's evidence and moved for partial summary judgment on the liability issue, arguing that, "as a matter of law, an employer who discharges an employee during a period of total temporary disability cannot defend against a claim of wrongful discharge on the ground that the discharge was based on the employee's inability to perform his assigned job duties," because every employee on TTD is unable to perform his job duties. To allow an employer to use § 5.C to legitimize discharging an employee on TTD "would render meaningless the prohibition set forth in § 5[.B]." *Id.* Mr. Wiles further argued that the only logical way to harmonize §§ 5.B and C would be "to hold that an employer is not required to rehire or retain any employee who is

---

[6](...continued)
Supreme Court held that " *the statute does not prohibit the discharge of an employee because he is absent from work, even when the absence is caused by compensated injury and medical treatment* ." *Pierce v. Franklin Elec. Co.* , 737 P.2d 921, 924 (Okla. 1987) (emphasis in original). The *Pierce* court expressly recognized that the "certified question presents inability to return to work as the *sole* reason for a temporarily disabled employee's discharge." *Id.* at 925.

unable to perform his assigned job duties *once temporary total disability has ended,*" but may not rely on § 5.C as a defense to discharging an employee on TTD. *Id.* at 1299-1300 (emphasis added).

The district court denied the parties' summary judgment motions, "except to the extent that Wiles may be terminated if he has been determined to be unable to ever perform his job duties even though he is on temporary total disability at the time of his termination." *Id.* Ultimately the jury found for Michelin. *Id.* at 1301.

On appeal, this court recognized the *Pierce* holding that the pre-1992 Act did not "'expressly provide employees with an excused absence from work during their healing period,'" and that the employer did not violate the Act when it discharged the employee due to his absence because the employee's absence from work was not itself a protected activity. *Id.* at 1302 (further quotation omitted). *Wiles* assumed the 1992 legislative amendment was a response to the *Pierce* decision, but did not "view the amendment as a repudiation of *Pierce*." *Id.* This court concluded, as had the district court, that "the amendment simply added another activity that is protected against employer retaliation to the list of protected activities contained in § 5," rejecting Mr. Wiles' argument that § 5.C does not apply to an employee under TTD. *Id.* at 1302-03. Addressing the interplay of §§ 5.B and C, this court stated:

> Pursuant to § 5 of Oklahoma's Workers' Compensation Act, an employer may not discharge an employee during a period of temporary total disability solely because of the employee's absence from work. An employer may, however, discharge an employee during a period of temporary total disability because the employee cannot perform his assigned job duties.

*Id.* at 1304.

This court did, however, disagree with the district court's conclusion that the protection of § 5.C "applies only to employees who are *permanently* unable to do their assigned duties." *Id.* at 1303. Seeing no indication that the 1992 amendment was intended to radically change § 5.C, this court concluded "that an employer need not establish an employee is permanently unable to perform his assigned duties in order to legitimately discharge the employee in accordance with § 5[.C]." *Id.* (footnote omitted).

This court subsequently followed *Wiles* in *Taylor*:

> The record indicates that Defendants terminated Plaintiff because he was physically unable to perform his job. Plaintiff, while remaining on temporary total disability, advised Defendants he would *never* be able to return to his route driving job, and Plaintiff's doctor subsequently confirmed this. Accordingly, Plaintiff did not establish that Defendants terminated him solely on the basis of absence from work in violation of the Oklahoma Workers' Compensation Act.

*Taylor*, 196 F.3d at 111.

In this case, plaintiff was unable to perform her assigned duties at the time of her termination, as in *Wiles*. It is less clear whether she would ever be able to

-14-

return to work, and there is no indication, as there was in *Taylor,* that she had advised defendant she would never be able to return to her particular job. Nonetheless, absent any contravening state authority, under *Wiles*, summary judgment for defendant would have been precedentially proper.

## Recent Oklahoma Authority

Shortly before the district court entered its summary judgment order, the Oklahoma Supreme Court decided *Upton v. State ex rel. Department of Corrections*, 9 P.3d 84 (Okla. 2000), the first Oklahoma case to consider the effect of the termination of an employee on TTD under § 5.B. In *Upton*, the worker was a state employee who had suffered an on-the-job injury and was awarded temporary total disability. *Id.* at 85. The employee also received leave without pay from May of 1996 through September of 1997 under the provisions of the Oklahoma Personnel Act. Okla. Stat. tit. 74, §§ 840-1.1 – 840-6.9. He was terminated *while still receiving TTD* for being absent from the job for more than one year[7] under the Personnel Act provision granting an employee on leave

---

[7] The provision of the Oklahoma Personnel Act allowing termination for absence of more than one year is not unlike the "policies" of private companies permitting discharge after a certain period of absence from the job. *See, e.g.*, *Taylor*, 196 F.3d at 1108 (employee terminated after one year for nonperformance of duties); *Wiles*, 173 F.3d at 1298 (employee terminated after twenty-four months medical absence).

without pay the right to return to his or her original position, within one year, subject to rules promulgated by the Office of Personnel Management.[8]

The employee pursued administrative and judicial remedies challenging his termination. The Oklahoma Court of Civil Appeals upheld the trial court's determination that § 5.B "prohibited Upton's termination solely for absenteeism (in excess of one year) since he was receiving TTD." *Id.* at 86. The Oklahoma Supreme Court granted certiorari to consider the interplay of § 5.B and § 840-2.21(D), which the court noted were in apparent conflict. *Id.* The court recognized that when the Personnel Act termination provisions were adopted,

---

[8] The pertinent terms of Okla. Stat. Ann. tit. 74 § 840-2.21 are as follows:

D. An employee on leave without pay pursuant to the provisions of this section shall have the right to be returned to his or her original position in accordance with rules promulgated by the Office of Personnel Management. If it is found necessary for the good of the state to fill the position during the period the employee is on leave without pay the employee filling the position shall vacate the position upon the return of the employee on leave without pay, subject to layoff, transfer or demotion rights earned under the Oklahoma Personnel Act, Section 840.1 et seq. of Title 74 of the Oklahoma Statutes and rules of the Office of Personnel Management . The right to return to the original position shall expire one (1) year from the date of the start of leave without pay. If the employee has not returned to the original position of the employee or some other position within the agency within one (1) year from the date of the start of leave without pay, the employee may be separated in accordance with the Oklahoma Personnel Act and rules of the Office of Personnel Management. (footnote omitted).

-16-

"neither enacted legislation nor Oklahoma's extant jurisprudence condemned an employer's discharge of an employee who was receiving TTD, so long as the discharge was not retaliatory." *Upton*, 9 P.3d at 86 (citing *Pierce*, 737 P.2d at 924). The court noted, however, that the legislative amendment to § 5 had "altered established legal precedent and denied an employer the right to dismiss an employee while he/she is receiving TTD." *Id.*[9] The *Upton* court further recognized that "[d]oubtless, the 1992 amendment of § 5 evinced legislative intent that a claimant was to be accorded protection from discharge based *solely* upon absenteeism while receiving TTD--i.e., *during the "healing period." Id.* at 87 (footnote omitted) (emphasis in original).

*Upton* also noted that the state agency's rules governing discharges recognized the 1992 amendment as forbidding termination of an employee who is receiving TTD and held that the state's employees were to be afforded "*the protection accorded employees in the private sector* when they seek and receive temporary total disability under the terms of the Workers Compensation Act." *Id.* at 88 (emphasis added). The court further concluded "[t]o the extent that the provisions of § 840-2.21(D) can be construed to permit an employee's discharge

---

[9] It thus appears that the 1992 amendment *did* repudiate *Pierce*, contrary to this court's earlier conclusion in *Wiles*, 173 F.3d at 1302. *See also Mosley v. Truckstops Corp. of Am.*, 891 P.2d 577, 581 n.9 (Okla. 1993) (noting that the "new [1992] statute does not allow an employer to discharge an employee during a period of temporary total disability solely on the basis of absence from work").

while he/she is receiving TTD, an *irreconcilable* conflict exists between § 840-2.21(D) and § 5[.B]," ultimately holding that because the amendment to § 5 was later in time, the provisions of § 840-2.21(D) were repealed by implication to the extent of any inconsistency. *Id.*

The court also reconciled the two statutes by noting that the State retained the right to terminate employees solely for absence from work for over a year "when they are receiving forms of compensation--*other than TTD*-- allowed under the [Workers' Compensation Act]," such as temporary partial disability. *Id.* (emphasis in original).

## Superceding Declaration

*Upton* differs from this case because the Oklahoma Supreme Court was attempting to reconcile two different statutory provisions, as opposed to two seemingly inconsistent sections of the same statute. Nonetheless, the principles in *Upton* provide guidance in harmonizing §§ 5.B and C, and *Upton* itself constitutes a "supervening declaration" contrary to this court's decision in *Wiles*. *Stauth*, 236 F.3d at 1267. As a consequence, *Upton*, rather than *Wiles*, provides the law applicable to this case.

The *Upton* court held that the State could not terminate an employee "while he is receiving compensation (temporarily total disability) for an on-the-job injury under the terms of the Workers' Compensation Act, 85 O.S. 1994 1 et seq," and

-18-

that the 1992 amendment to § 5 "denied the employer the right to dismiss an employee while he/she is receiving TTD." *Id.* at 86. The court also concluded that the amendment "evinced legislative intent that a claimant was to be accorded protection from discharge based *solely* upon absenteeism while receiving TTD-- i.e., *during the 'healing' period*." *Id.* at 87[10] (emphasis in original). Finally, in harmonizing §§ 5 and 840-2.21(D), the court stated that the "State's employees are *afforded the protection accorded employees in the private sector* when they seek and receive temporary total disability under the terms of the Workers['] Compensation Act," *id.* at 88 (emphasis added).

*Upton* thus held that an employee, whether private or public, cannot be terminated during a period of temporary total disability based solely on absence from work. In order to reconcile §§ 5.B and C, we believe, in light of *Upton*, that the Oklahoma Supreme Court would hold that an employer may discharge an employee who is unable to perform his assigned duties under § 5.C, but only if that employee is not protected (receiving TTD compensation) by § 5.B.

---

[10]     The district court in this case found that plaintiff "had been given an ample opportunity to heal as well as opportunities to apply for positions which would not have required keyboarding." Aplt. App., Vol. I at 16.     *Upton* holds, however, that the time on TTD    *is* the healing period.    *See* 9 P.3d at 87;  *see also  George E. Failing Co. v. Watkins*  , 14 P.3d 52, 54 n.5 (Okla. 2000) (" *Temporary total disability*  is defined as the 'healing period,' or the time in which the employee is totally incapacitated for work by an on-the-job injury" (citing         *Bodine v. L.A. King Corp.* , 869 P.2d 320, 322 (Okla. 1994)) (emphasis in        *Failing* ).

There is further, albeit not precedential, authority for this interpretation as well. In *Grimes*, 1997 WL 183547, which preceded *Wiles*, this court considered a district court ruling in favor of an employee discharged while on TTD, notwithstanding the employer's claimed entitlement to the protection of § 5.C. *Id.* In interpreting the seemingly conflicting subsections of § 5, this court held:

> Janesville Products would have us interpret section 5.[C] of the Act to permit employers to terminate employees who are temporarily totally disabled, and therefore unable during the period of that disability to perform their assigned duties. If faced with this question, we believe that the Supreme Court of Oklahoma would not adopt such an interpretation, which would nullify section 5.[B]. Instead, we believe that court would find, in cases involving employees who become temporarily totally disabled as a result of a work-related injury, that section 5.[C] becomes operative only after the period of temporary total disability has ended. In other words, when an employee's period of temporary total disability ends, that employee is either physically able to return to work, or the disability has become permanent. Only in the latter case does section 5.[C] permit an employer to discharge the employee without liability.

*Id.* at \*\*2.

In light of *Upton*,[11] this court is of the view that as applied to this case, plaintiff's termination violated § 5.B because she had not returned to work while still on temporary total disability.

---

[11] Although *Upton* was decided before the district court granted summary judgment to defendant in this case, the timing was only a matter of weeks, and neither the parties nor the court appear to have been aware of the Oklahoma Supreme Court's decision.

-20-

## Conclusion

Accordingly, the judgment of the district court as to the workers' compensation claim is REVERSED, and the matter is REMANDED for further proceedings consistent with this opinion. The district court's judgment is affirmed in all other respects.