**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICK NEIL LONDON,

　　　　　Plaintiff - Appellant,

v.

JOSEPH W. BEATY, individually and
in his official capacity; CITY OF
TULSA, a municipal corporation,

　　　　　Defendants - Appellees,

ERIC J. HILL, individually and in his
official capacity; DAVID A. FOUST,
individually and in his official
capacity,

　　　　　Defendants.

No. 13-5042
N.D. Oklahoma
(D.C. No. 4:11-CV-00028-GKF-FHM)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **MURPHY**, and **MORITZ**, Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case was therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Introduction

In 2011, Patrick Neil London filed a federal civil rights action against Defendants, alleging they violated his fourth amendment right to be free from unreasonable searches and seizures. London also raised Oklahoma state tort claims. The district court dismissed the fourth amendment claims pursuant to Fed. R. Civ. P. 12(b)(6), concluding London's complaint failed to allege facts sufficient to state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court also dismissed the state-law claims.

London brought this appeal challenging the district court's dismissal of his complaint. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the judgment.

## II. Factual Background

In 2009, officers Eric Hill and David Faust[1] arrested London on outstanding warrants after pulling him over for failing to come to a complete stop at a stop sign. When officers searched London's vehicle incident to the arrest, they found illegal drugs. London was incarcerated for 435 days on drug and traffic charges until the state district court ordered his release.

---

[1]According to the City, Defendant Faust's name has been repeatedly misspelled as Foust.

After his release, London filed a complaint in federal district court naming Officer Hill, Officer Faust, Officer Joseph Beaty, and the City of Tulsa, Oklahoma (the "City") as defendants. He alleged Defendants violated his fourth and fourteenth amendment rights by illegally arresting and searching him. Specifically, he alleged the officers acted intentionally, arbitrarily, and maliciously by seizing him without probable cause. These claims were raised pursuant to 42 U.S.C. § 1983 and were leveled against Hill, Faust, and Beaty in their individual and official capacities. London also raised a § 1983 claim against the City, asserting it had a policy or custom of allowing its police officers to deprive citizens of their constitutional rights. In addition to the federal claims, London asserted state-law negligence claims against all Defendants based, in part, on the same set of facts underlying his § 1983 claims.

The City moved to dismiss all the claims asserted against it and all the claims asserted against the officers in their official capacities, arguing London's complaint failed to state a claim upon which relief could be granted. The district court granted the motion in full, dismissing all of London's claims with the exception of those asserted against the officers in their individual capacities.

In its ruling, the court concluded the § 1983 claims asserted against the officers in their official capacities were duplicative of the claims asserted against

the City and, thus, should be dismissed.[2] *See Kentucky v. Graham*, 473 U.S. 159, 165-67, 167 n.14 (1985). The court next addressed London's § 1983 claim that the City violated his fourth amendment rights by "establish[ing] a policy[,] practice, pattern and/or custom of allowing its police officers to deprive citizens of their constitutional rights."[3] *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) ("[Section] 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." (quotations and alterations omitted)). The district court began its analysis by noting that London's only support for this claim was a reproduced list of allegations made against several Tulsa police officers in a 2010 criminal indictment. The court ruled those allegations wholly failed to establish the required direct causal link between the purported unconstitutional practices and the harm London allegedly suffered. *See Bd. of Cnty. Comm'rs v. Brown*, 520

---

[2]London has not challenged the dismissal of these claims.

[3]The district court noted that London's complaint, while purporting to also assert claims arising under the Fourteenth Amendment, contained no factual allegations supporting a fourteenth amendment violation. Accordingly, to the extent such a claim was asserted, the court dismissed it. Wisely, London has not appealed from this portion of the district court's ruling. *See Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (holding the Fourth Amendment, not the Fourteenth Amendment, governs claims arising from an arrest or seizure).

U.S. 397, 404 (1997) (holding a § 1983 plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"). Accordingly, the court concluded London's complaint failed to meet the *Twombly* pleading standard because it failed to identify the alleged "policy makers" by name, what those individuals knew about the alleged practice of willful blindness to officers' violations of citizens' constitutional rights, or how and when the individuals learned of the alleged practice. *See Twombly*, 550 U.S. at 570 (holding a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face").

The district court next addressed London's state-law claims. Relying on Oklahoma case law interpreting the Oklahoma Governmental Tort Claims Act ("GTCA"), the court first concluded the City could not be liable for the alleged negligent acts of the individual officers because the tortious conduct described in London's complaint required bad faith on the part of the officers. *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001) ("[W]hen, for viability, the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit."). London has not appealed this portion of the district court's ruling. He has, however, appealed the court's additional ruling that his state-law negligence claims against the City are

-5-

barred by the discretionary function exception set out in Okla. Stat. tit. 51, § 155.

In pertinent part, that statute provides that

> [t]he state or a political subdivision shall not be liable if a loss or claim results from:
>
> . . . .
>
> 4.  Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provisions, ordinance, resolution, rule, regulation or written policy;
>
> 5.  Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees . . . .

Relying on *State v. Gurich*, 238 P.3d 1, 4 (Okla. 2010), the district court concluded London's claims of negligent establishment of policy, supervision, and training were precluded by these exemptions.

After the district court granted the City's motion, the only remaining claims were London's § 1983 claims against officers Hill, Faust, and Beaty in their individual capacities. On March 13, 2013, the claims against Officer Faust were dismissed without prejudice for lack of service and the claims against Officer Hill were voluntarily dismissed without prejudice on London's oral motion. The district court granted Officer Beaty's motion for summary judgment as confessed.[4] London then filed his notice of appeal.

---

[4]London has not asserted any arguments challenging this ruling.

**III. Discussion**

As an initial matter, the City has challenged the jurisdiction of this court to address London's appeal, arguing the district court's judgment is not final because the individual claims against Hill and Faust were dismissed without prejudice. *See Jackson v. Volvo Trucks N. Am., Inc.*, 462 F.3d 1234, 1238 (10th Cir. 2006) ("Our general rule is that a party cannot obtain appellate jurisdiction where the district court has dismissed at least one claim without prejudice because the case has not been fully disposed of in the lower court."); *Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147, 148 (10th Cir. 1992) ("[W]hen a plaintiff voluntarily requests dismissal of her remaining claims without prejudice in order to appeal from an order that dismisses another claim with prejudice, we conclude that the order is not 'final' for purposes of § 1291."). On March 21, 2014, however, a stipulated notice of dismissal was filed with the district court, dismissing the claims against Officer Hill with prejudice. Further, because the claims against Officer Faust were dismissed for failure to effect service, he is not considered a party in this matter for purposes of Rule 54(b). *Bristol v. Fibreboard Corp.*, 789 F.2d 846, 847 (10th Cir. 1986). Accordingly, this court has jurisdiction to consider London's appeal.

London first challenges the district court's dismissal of the fourth amendment claims asserted against the City. The district court's ruling on this issue is reviewed *de novo*. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009).  A complaint will only survive dismissal under Rule 12(b)(6) if it contains more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  We can quickly reject London's argument that the district court applied a heightened pleading standard—under the governing standard set out in *Twombly*, it is clear London has not stated a claim upon which relief may be granted.

To make out his fourth amendment claim against the City, London must, *inter alia*, show a direct causal link between the City and the constitutional violation.  *Brown*, 520 U.S. at 404.  Here, London alleges "policy makers for the City of Tulsa, through willful blindness, caused a policy[,] practice, pattern and/or custom of allowing its police officers to deprive citizens of their constitutional rights."  At a minimum, London's complaint must identify these policy-makers and the specific actions they took that resulted in the deprivation of his fourth amendment rights.  This he has wholly failed to do.  Neither London's complaint nor his appellate briefing identify a single policy-maker or a specific action allegedly taken by a policy-maker.  Even if we assume the truth of the fifty-two allegations of police misconduct set out in London's complaint, he has failed to allege any facts from which it could be concluded the City was aware of those incidents of misconduct at the time of his traffic stop—thus failing to sufficiently allege a direct causal link.  Accordingly, this court has no difficulty concluding the complaint fails to meet the *Twombly* standard because the

allegations therein are wholly conclusory and the complaint contains nothing more than a recitation of the elements of London's cause of action. For this reason, the dismissal of London's fourth amendment claims against the City is **affirmed** for substantially the reasons stated by the district court.

London also argues the district court erred by concluding the City was immune from his state-law claims under the GTCA. This issue is also reviewed *de novo*. *Cooper v. Cent. & Sw. Servs.*, 271 F.3d 1247, 1251 (10th Cir. 2001). In reaching its decision, the district court relied on a recent case in which the Oklahoma Supreme Court held the state of Oklahoma "and its political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented." *Gurich*, 238 P.3d at 4 (interpreting Okla. Stat. tit., 51 § 155). London argues the Oklahoma Supreme Court's statement in *Gurich* is dicta and the more relevant rule can be found in a federal decision interpreting Nevada law. *See Perrin v. Gentner*, 177 F. Supp. 2d 1115, 1126 (D. Nev. 2001) (ruling the training and supervision of a police officer, unlike the initial decision to hire the officer, were not discretionary functions).

London's complaint set out three state-law negligence claims against the City. He described the City's negligent conduct as follows:

> A. The negligent establishment (or, alternatively, negligent failure to enforce) of a policy, practice, and custom within the City of Tulsa Police Department to omit and/or failure to establish or provide

adequate training and supervision regarding the proper lawful basis to effectuate an arrest when dealing with its citizens;

B. Negligently failed to enforce the regulations, policies, rules, and practices of the City of Tulsa Police Department pertaining to the proper lawful basis to effectuate an arrest;

C. The City of Tulsa, through its policy-makers, negligently failed to instruct, supervise, control and/or discipline, on a continuing basis, Defendants Eric J. Hill, David A. Foust [sic] and Joseph W. Beaty in the performance of their duties to refrain from unlawfully arresting the Plaintiff.

It is unnecessary, and impossible, to determine whether these state-law claims are barred by the discretionary function exemption because the complaint fails to meet the *Twombly* pleading standard. London asserts "policy-makers" for the City were negligent in failing to instruct, supervise, control, and discipline the officers involved in the traffic stop, but fails to identify any policy-maker by name. Accordingly, it is impossible to determine from the complaint whether these unnamed individuals even had the power to make discretionary decisions. Similarly, London alleges the City failed to enforce regulations, policies, rules, and practices of the City of Tulsa Police Department. He has, however, failed to identify these regulations, policies, rules, and practices, making it impossible to determine whether they even exist or, if they do exist, who was responsible for enforcing them. In short, London's state-law claims suffer from the same infirmity as his § 1983 claims—the claims are nothing more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In his response to the City's motion to dismiss, London summarily argued his complaint met the *Twombly* pleading standard and the state-law tort claims should not be dismissed at the "preliminary" stage of the proceedings without permitting him the "opportunity for discovery, amendment of the pleadings, and a proper framing of these very complicated OGTCA claims."[5]  London misapprehends his burden at the pleading stage.  He must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence of" negligence. *Id*. at 558-60.  He is not entitled to file a bare-bones complaint and fill in those facts after discovery is complete.

## IV.    Conclusion

We **affirm** the grant of the City's motion to dismiss.  London's complaint fails to adequately plead either a fourth amendment claim or an Oklahoma state negligence claim.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[5]Neither the City's motion to dismiss nor London's response was included in the appendix.  The court supplements the appendix with these documents on its own motion.

13-5042, *London v. Hill*

**MORITZ,** Circuit Judge, concurring in part and concurring in the judgment:

I agree with my colleagues that we must affirm the district court's dismissal of London's complaint, and I join those portions of the majority opinion addressing our jurisdiction and London's state-law claims. I write separately to express my view that we should dismiss London's 42 U.S.C. § 1983 claim on a narrower ground.

The majority insists that to survive a motion to dismiss, a complaint alleging municipal liability under § 1983 based on custom rather than policy must identify both a specific policymaker and a specific action taken by that policymaker. Maj. Op. at 8. But London doesn't premise his claim on a specific policymaker's action. Instead, he cites the alleged failure of *any* policymaker to take *any* action. Given the nature of London's claim, the omissions identified by the majority should not necessarily torpedo his complaint, particularly considering the lack of any authority or explanation to support the majority's conclusion. But I would not reach this question because London has failed to allege facts sufficient to permit an inference that any of the City's policymakers had notice of the pattern of constitutional violations he alleges.

Municipalities are liable under § 1983 when there exists a "'direct causal link'" between the enforcement of the municipality's policies and the deprivation of an individual's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). But the existence of that direct causal link does not turn on the enactment or adoption of an *official* policy. Rather, a municipality may be liable for constitutional

violations resulting from its customs, even if those customs have not received formal approval from the municipality's policymakers. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). A plaintiff who pursues municipal liability based on such a custom may establish the requisite causal link between the municipality's actions and the constitutional violation by showing "(1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008).

The majority holds that London's complaint fails to sufficiently allege a direct causal link between the City and the alleged constitutional violation because (1) he fails to identify any policymakers; (2) he fails to identify any specific actions taken by those policymakers; and (3) he fails to allege any facts suggesting the City had notice of the alleged pattern of misconduct. Maj. Op. at 8. But the majority's reliance on the first two omissions is at odds with this court's express acknowledgement that a plaintiff can employ a variety of theories to allege municipal liability under § 1983 based on a policy or custom. *See*, *e.g.*, *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (explaining "municipal policy or custom may take the form of" (1) a formal regulation or policy; (2) a practice so widespread as to amount to custom; (3) decisions of employees with final policymaking authority; (4) ratification by policymakers of decisions made by subordinates to whom the policymakers delegated authority; *or* (5) failure to adequately train or supervise employees).

2

Liability under some of these theories may well require identification of a specific policymaker and his or her specific actions. For instance, a plaintiff who alleges liability based on the decision of an employee with final policymaking authority presumably must identify both the decision and the employee. But these requirements do not necessarily apply to London's claim. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (explaining that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context").

Unlike claims asserting liability based on the adoption of an official policy, London's allegations of deliberate indifference to and tacit authorization of a pattern of officer misconduct pervasive enough to constitute a custom seem premised, by definition, on policymakers' *inaction. See Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 758-59 (10th Cir. 2014) (distinguishing § 1983 liability based on official policy from § 1983 liability based on unwritten custom, and discussing theory of "liability by inaction"). Similarly, London does not suggest that a specific policymaker committed a specific act. Instead, he contends *none* of the City's policymakers took action. Nor does London assert that a specific policymaker received notice of the misconduct. Rather, he suggests that a plaintiff can satisfy *Rost*'s actual notice requirement by alleging a history of past incidents so pervasive that *someone* at the policymaking level was bound to have known about them. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402-04 (4th Cir. 2014), *cert. denied*, No. 14-887, 2015 WL 275612 (U.S. Apr. 27, 2015) (reversing dismissal of complaint asserting police liability for constitutional violation

3

arising from police department's custom when department failed to take action to correct pattern of officer misconduct, and noting police department's notice and indifference could be inferred from sufficiently pervasive pattern of misconduct).

Given the various approaches to alleging liability under § 1983 and the nature of London's claim, I cannot agree with the majority's one-size-fits-all approach in the absence of any authority or explanation to support it, especially under our liberal pleading standards. *See id.* at 403 ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier."). Nevertheless, I would not reach the issue here because I agree we must affirm the district court's dismissal of London's § 1983 claim based on his failure to plead sufficient facts to establish notice. I would, however, take a slightly different tack in reaching that result.

The majority appears to accept as true all 52 of London's allegations of police misconduct. Maj. Op. at 8. But I would conclude that most of those allegations are mere legal conclusions and thus are not entitled to the assumption of truth that applies to factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Even assuming London is correct that he may sufficiently plead notice by alleging a history of past incidents so numerous and widespread as to support an inference that someone at the policymaking level must have known about the alleged misconduct, I would find that London's factual allegations are insufficient, as a matter of law, to suggest a pattern extensive enough to support such an inference. Thus, I would affirm the district court's dismissal of London's complaint based on his failure to allege sufficient facts to support an inference that any policymaker had notice of the pattern of misconduct he alleges. I would therefore reserve

4

for another day the more difficult question of whether a plaintiff like London must identify a specific action taken by a specific policymaker to avoid dismissal under Fed. R. Civ. P. 12(b)(6).