Ellen YEISER, Plaintiff–Appellant
and Cross–Appellee,

v.

FERRELLGAS, INC., a Delaware corporation operating under the trade name Thermogas, Defendant–Appellee and Cross–Appellant.

No. 06CA0494.

Colorado Court of Appeals,
Div. IV.

Sept. 18, 2008.

Rehearing Denied Nov. 6, 2008.

Certiorari Granted Aug. 31, 2009.

Bendinelli Law Office, P.C., Marc F. Bendinelli, W. Joseph Lapham II, Denver, Colorado; Fowler Law Firm, Timms R. Fowler, Fort Collins, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Senter Goldfarb & Rice, L.L.C., Tiffaney A. Norton, Meredith A. Quinlivan, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge VOGT.

In this breach of contract action, plaintiff, Ellen Yeiser, appeals the judgment entered on a jury verdict against defendant, Ferrellgas, Inc., after the trial court set off certain sums from the jury's award. Defendant

cross-appeals. We affirm in part, reverse in part, and remand with directions.

Defendant entered into a contract with plaintiff to deliver propane gas to plaintiff's home in Silverthorne, Colorado. When the propane was not timely delivered, the pipes in the home froze, causing extensive damage.

Plaintiff sued defendant for breach of contract. Defendant admitted liability but contested plaintiff's claimed damages. At the conclusion of the trial, the jury awarded plaintiff $314,323.21.

Before this action was filed, plaintiff had received $212,071.94 under her homeowners insurance policy to pay for repairs to her home. The insurer claimed a right to subrogation, and defendant paid it $172,657.55 to settle its subrogation claim. After the trial, the court set off the $212,071.94 from the jury award.

Defendant sought an award of costs on the basis that plaintiff's recovery, after the setoff, did not exceed defendant's statutory offer of settlement. The trial court agreed, awarded defendant $30,841.62 in costs, and, after calculating prejudgment interest, entered judgment for plaintiff in the amount of $145,812.85.

## APPEAL

### I. Setoff

Plaintiff contends that the trial court's setoff of $212,071.94 violates the common law collateral source rule. We conclude that the collateral source rule did not bar a setoff in this case, but that the amount of the setoff should have been limited to the $172,657.55 paid by defendant to plaintiff's insurance company.

### A. The Collateral Source Rule Does Not Preclude Setoff

■ Under the common law collateral source rule, "compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which he has not contributed, will not diminish the damages otherwise recoverable from the wrongdoer." *Kistler v. Halsey,* 173 Colo. 540, 545, 481 P.2d 722, 724 (1971);

*accord Technical Computer Services, Inc. v. Buckley,* 844 P.2d 1249, 1253 (Colo.App. 1992).

■ Where the collateral source rule applies, a plaintiff may recover compensation from two different sources for the same injury, as long as the "collateral source" was "wholly independent of the wrongdoer." *Smith v. Zufelt,* 880 P.2d 1178, 1184 (Colo. 1994). Benefits from collateral sources have traditionally included payments from insurance policies, employee benefits, gratuities, and social legislation. *Id.*

■ In *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1074–75 (Colo.1992), the supreme court explained that the purpose of the rule was to prevent defendants from receiving credit for compensation from collateral sources to which they did not contribute, "thereby reduc[ing] the amount payable as damages to the injured party. To the extent that either party received a windfall, it was considered more just that the benefit be realized by the plaintiff in the form of double recovery rather than by the tortfeasor in the form of reduced liability." As relevant here, under the rule, amounts received as proceeds under an insurance policy purchased by the plaintiff were generally not to be set off against the damages for which the defendant was obligated. *Id.* at 1075.

■ The common law collateral source rule has been codified at section 13–21–111.6, C.R.S.2008. However, the statute by its terms applies in actions "to recover damages for a tort resulting in death or injury to person or property." *See Colorado Permanente Medical Group, P.C. v. Evans,* 926 P.2d 1218, 1230 (Colo.1996). Thus, in this contract case, we apply the common law rule rather than its statutory codification, which contains specific limitations on recovery that are not applicable in contract cases. *See id.; see also Van Waters,* 840 P.2d at 1077; *Technical Computer Services,* 844 P.2d at 1254.

Plaintiff argued in the trial court that, under the collateral source rule, the jury should not learn of the payments she had received from her insurance company, and her damages should not be offset by such payments. The trial court agreed with de-

fendant that the collateral source rule was inapplicable because, by reimbursing the insurer for its payment to plaintiff, "[defendant] did actually 'contribute' to the collateral source of payments at issue here." Thus, the court ruled, any award of damages on plaintiff's breach of contract claim would be "set off by any prior payments made by [defendant]" to the insurer to reimburse plaintiff's damages. The court later concluded that defendant was entitled to set off the entire amount plaintiff received from her insurer, not just the amount defendant paid to the insurer.

◼ We agree with the trial court that the collateral source rule did not preclude a setoff in this case. Although plaintiff received payments from her homeowners insurer pursuant to her policy, the insurer had a subrogation claim that entitled it to be reimbursed, out of plaintiff's recovery against defendant, for the sums it had paid her under the policy. That subrogation claim was extinguished by defendant's payment. Thus, this is not a case in which plaintiff's compensation was "wholly independent of the wrongdoer and to which [the wrongdoer] has not contributed." *Kistler*, 173 Colo. at 545, 481 P.2d at 724; *see also* John G. Fleming, *The Collateral Source Rule and Contract Damages*, 71 Cal. L.Rev. 56, 82 (1983) (recognizing that availability of subrogation "is widely considered the optimal solution for the whole problem of collateral benefits on the ground that it prevents both the defendant from taking an undeserved advantage of the benefit and the plaintiff from being overcompensated"); *Van Waters*, 840 P.2d at 1080 (Rovira, C.J., specially concurring) (noting that majority's construction of section 13–21–111.6 would not ordinarily result in a windfall recovery for plaintiffs because, "[g]enerally, an insurance policy will provide for subrogation or refund of benefits upon a tort recovery. Thus, the plaintiff will receive no double recovery.").

**B. Defendant Was Entitled to Set Off Only the Amount It Paid, Not the Total Amount Plaintiff Received from Her Insurer**

Our conclusion that defendant was entitled to a setoff from the jury award does not end the inquiry. We must still decide whether the setoff should have been for the $212,071.94 plaintiff received from her insurer or only for the $172,657.55 that defendant paid the insurer to settle its subrogation claim. We conclude that defendant was entitled to set off only the amount it paid the insurer, and that the trial court therefore erred in setting off $212,071.94 from the damages award.

**1. The Issue Is Preserved**

◼ As an initial matter, we reject plaintiff's contention that, because defendant consistently argued in the trial court that it was entitled to set off the full amount of plaintiff's insurance payments, defendant's potential entitlement to setoff in a lesser amount is not properly before us on appeal.

◼ In civil cases, we generally decline to address issues that were not raised in the trial court. *See Estate of Stevenson v. Hollywood Bar and Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."). Additionally, the "invited error" doctrine prevents a party from inducing an erroneous ruling and then seeking to benefit by appealing that error. *Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1219 (Colo.App.2008); *see Hansen v. State Farm Mutual Automobile Insurance Co.*, 957 P.2d 1380, 1385 (Colo.1998). Neither principle prevents us from addressing the issue presented here.

As noted, the trial court initially ruled, in response to plaintiff's motion in limine, that the damages award would be set off by any prior payments made by defendant to plaintiff's insurer to reimburse plaintiff for her damages. In its subsequent motion for setoff, defendant acknowledged this ruling, pointed out that there would be two "possible scenarios" for setoff—one, setting off the total amount the insurer paid plaintiff and the other, setting off the amount it had paid the insurer to settle its claim—and argued that the former "scenario" was the "correct outcome" in order to preclude plaintiff from receiving a double recovery. In her response, plaintiff noted her disagreement with

the court's prior ruling, but argued that the proper amount of the setoff was the amount defendant "contributed," or $172,657.55. The trial court also observed, in discussing proposed posttrial motions with counsel after the jury returned its verdict, that "there is an issue as to whether a 172 or 212 figure is appropriate."

Thus, the issue presented here is not one that is unreviewable on appeal because it was never raised in the trial court. Nor are we barred from considering the issue on a theory that any error was invited by defendant. Defendant did not "induc[e] an erroneous ruling and then seek[ ] to benefit by appealing that error." *Boulder Plaza Residential, LLC*, 198 P.3d at 1220.

### 2. Defendant May Set Off Only the Amount It Paid

We are aware of no Colorado case that has considered whether, when a defendant has compensated an insurer who has an enforceable subrogation right, the defendant is entitled to set off the entire amount of the insurer's subrogation claim or only the amount the defendant paid to extinguish the claim. The sparse case law from other jurisdictions is split on the issue. *Compare Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 136 P.3d 428, 442 (2006) (defendants were entitled to set off only the amounts they paid plaintiffs' insurers to settle subrogation claim, not the full amount of that claim), *and Estate of Farrell ex rel. Bennett v. Gordon*, 770 A.2d 517, 520 (Del. 2001) (where injured parties' insurance carrier paid them $19,000 and then was paid $13,000 by wrongdoer's insurance carrier on its subrogation claim, wrongdoer was entitled to set off only the $13,000), *with Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 942 (Alaska 1983) (defendant was entitled to set off total amount plaintiff received as insurance proceeds; setoff was not limited to amount defendant paid in settling with insurance company), *and Great West Casualty Co. v. State Dep't of Transportation & Development*, 960 So.2d 973, 977 (La.Ct.App.2007) ("Where subrogation is proven, the plaintiff may recover only his remaining interest in the partially subrogated claim.").

In concluding that the setoff amount should be limited to the amount actually paid by or on behalf of the wrongdoer, both the Kansas Supreme Court and the Delaware Supreme Court recognized that the plaintiffs would, to some extent, receive a double recovery. However, both courts concluded that such limited double recovery was acceptable under the collateral source rule as long as the source of the payment was not connected to the wrongdoer. *See Hayes*, 136 P.3d at 442 (accepting defendants' contention that setoff should be in amount of insurer's subrogation claim "would allow the defendants to escape paying the full amount of plaintiffs' damages"; instead, if settlement payment was less than amount of subrogation claim, "the plaintiffs can retain the difference, and to that extent double recovery is permissible"); *Estate of Farrell*, 770 A.2d at 520 ("While the result here is somewhat anomalous to the extent that the [injured parties] will recover more than the value of their motor vehicle, the collateral source rule supports such recovery," as long as the source of payment is unconnected with the wrongdoer).

■ The reasoning of the Kansas and Delaware courts is consistent with the Colorado Supreme Court's characterization of the common law collateral source rule in this state. *See Van Waters*, 840 P.2d at 1074 ("To the extent that either party received a windfall [upon application of the collateral source rule], it was considered more just that the benefit be realized by the plaintiff in the form of double recovery rather than by the tortfeasor in the form of reduced liability."). We therefore adopt the analysis of *Hayes Sight & Sound* and *Estate of Farrell* and apply it here. Under that analysis, defendant was entitled to set off only the amount it paid to settle the insurer's subrogation claim—that is, $172,657.55. On remand, the trial court is directed to set off that amount, not the $212,071.94 paid to plaintiff by her insurer, from the jury's award of damages.

### II. Cost Award

■ Plaintiff also contends that the trial court erred in awarding costs to defendant upon determining that the amount of her recovery, after the jury award was reduced

by the amount defendant paid to settle the insurer's subrogation claim, did not exceed defendant's $197,000 pretrial settlement offer. Plaintiff contends the trial court should have compared the settlement offer with the jury award before the award was reduced by the setoff. We agree.

Section 13–17–202 (1)(a)(II), C.R.S.2008, states:

> If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

■ The statute is intended to encourage the settlement of litigation by requiring a party who rejects a reasonable settlement offer and then fails to recover more at trial to pay the offeror's post-offer costs. *Weeks v. City of Colorado Springs,* 928 P.2d 1346, 1349 (Colo.App.1996).

Although section 13–17–202(1)(a)(II) requires the trial court to compare the settlement offer with the "final judgment," "final judgment" for purposes of determining a cost award does not include certain sums that may be part of a final judgment for other purposes. For example, section 13–17–202(2), C.R.S.2008, states:

> When comparing the amount of any offer of settlement to the amount of a final judgment actually awarded, any amount of the final judgment representing interest subsequent to the date of the offer in settlement shall not be considered.

*See also Novak v. Craven,* 195 P.3d 1115, 1121 (Colo.App.2008) (for purposes of section 13–17–202, a "final judgment" includes prejudgment interest, except to the extent specifically excluded by section 13–17–202(2), but not costs); *Rubio v. Farris,* 51 P.3d 992, 994–95 (Colo.App.2002) (in determining whether judgment obtained by plaintiff is greater than defendant's settlement offer, judgment and offer must be considered in like manner; thus, because offer included all costs and interest, judgment must also in-

clude these items); *Chartier v. Weinland Homes, Inc.,* 25 P.3d 1279, 1282–83 (Colo.App.2001) (in calculating whether final judgment exceeds amount of settlement offer that did not specifically include costs, trial court must exclude post-offer attorney fees awarded as costs, but include pre-offer fees awarded as costs).

■ To trigger the application of section 13–17–202(1)(a)(II), the offer of settlement must be sufficiently definite to allow the plaintiff to "weigh the risks and benefits of the offer against the judgment that may be obtained." *Weeks,* 928 P.2d at 1351 (concluding that trial court properly denied costs under section 13–17–202(1)(a)(II) where defendant made an unapportioned settlement offer that effectively prevented plaintiffs from intelligently weighing risks and benefits and independently deciding whether to accept offer); *see also Taylor v. Clark,* 883 P.2d 569, 570–71 (Colo.App.1994) (same).

The parties cite no authority, and we have found none, stating a general rule for determining the amount of the judgment for purposes of section 13–17–202(1)(a)(II) when a jury award is reduced after trial by a setoff. Absent such authority, we apply the reasoning of divisions of this court that have looked at what is included in the offer to determine what should be included in the judgment. In *Rubio,* 51 P.3d at 994–95, the division stated:

> In determining whether the judgment obtained by plaintiff is greater than the offer of settlement made by defendant, the judgment and offer must be considered in a like manner. Thus, because the offer included all costs and interest, the judgment must also include these items. Accordingly, the offer of settlement must be compared to the amount of the jury verdict, plus all reasonable costs and interests incurred as of the date of the offer.

Because the defendant's offer of settlement in *Rubio* was for a specified amount which "include[d] all costs and interest," the trial court should have considered the plaintiff's preoffer costs in determining whether the judgment obtained by the plaintiff exceeded the defendant's offer of settlement. *Id.; see also Chartier,* 25 P.3d at 1282–83 (relying on federal authority requiring that,

when offer includes costs then accrued, judgment must be defined on same basis to determine whether it is more favorable than offer); *cf. Novak*, 195 P.3d at 1121 (in concluding that "final judgment" for purposes of section 13–17–202 included prejudgment interest but not costs, division distinguished *Rubio* because settlement offer before it did not "reference, much less explicitly include" costs).

Before trial, defendant offered to settle plaintiff's claims for $197,000 "inclusive of costs and interest." The offer did not reference the earlier payment made by defendant to plaintiff's insurer, and it did not indicate whether the $197,000 was intended to be in addition to the amount defendant had previously paid the insurer or to be inclusive of that payment.

Because we are to consider the offer and the judgment obtained "in a like manner" in determining whether the judgment is greater than the offer of settlement, *see Rubio*, 51 P.3d at 994, we conclude that the judgment, like the offer, should be considered without regard to the effect on it of the insurance payment. Thus, we compare plaintiff's recovery before the setoff—that is, $314,-323.21—with the $197,000 settlement offer. Because the former sum exceeds the offer, defendant was not entitled to recover costs under section 13–17–202(1)(a)(II).

## CROSS–APPEAL

### I. Defendant Was Not Entitled to an Additional Setoff

Defendant contends the trial court erred in refusing to set off an additional $123,430.96 from the jury award. We disagree.

During closing argument, plaintiff's counsel referred to the $212,071.94 that plaintiff's insurer had paid. Part of that sum had been paid directly to plaintiff. Counsel continued: "Now, do you remember I said [the insurer] gave [plaintiff] $123,000? That needs to come out, okay, because that's part of the checks that she wrote. Okay. To not deduct that would be double-dipping." The jury subsequently sent out a question asking how to reconcile that statement with the instruction telling them not to reduce the damages

award by amounts paid to or by plaintiff's insurer.

After trial, defendant filed a motion asking the court to set off an additional $123,430.96 "which Plaintiff's attorney [led] the jury to believe in closing was additional compensation received from [the insurer] and the parties agreed to set off after the verdict." The agreement to which defendant referred was allegedly reached during a colloquy with the court about a response to the jury question regarding the $123,000. The trial court denied the motion, finding that there was "absolutely no evidence presented at trial of such an amount being paid" by either the insurer or defendant, and that there was no "agreement" to set off that amount.

We defer to the trial court's findings of fact unless they have no support in the record. *Tatum v. Basin Resources, Inc.*, 141 P.3d 863, 867 (Colo.App.2005). Here, the record amply supports the trial court's findings that (1) there was no evidence of an additional $123,430.96, above and beyond the $212,071.94, paid by the insurer to plaintiff, and (2) there was no agreement between the parties to set off such additional amount. On the contrary, during the colloquy relied on by defendant as evidencing an agreement, defendant's counsel stated she agreed that the jury should be told not to deduct that sum "with the understanding that the setoff is then the 212 plus the 123." Plaintiff's counsel responded: "That's impossible."

Despite the absence of evidentiary support for, or any agreement regarding, such additional setoff, defendant argues on appeal that the additional setoff should have been granted "to cure [plaintiff's] inappropriate closing argument." We are aware of no authority for imposing such a sanction.

### II. Prejudgment Interest Calculation

Defendant also contends the trial court's prejudgment interest award was erroneous because it was calculated based on the amount awarded by the jury, without first (1) deducting the award of costs to defendant and (2) offsetting the amount paid to plaintiff's insurer. Although our reversal of the cost award obviates the need to consider the

merits of the first contention, we note that defendant's argument is contrary to *Bennett v. Hickman,* 992 P.2d 670, 675 (Colo.App. 1999), which held that costs are to be subtracted from a jury award only after prejudgment interest has been added. As to the second contention, we conclude that the trial court's method of calculating prejudgment interest was correct.

Section 5–12–102(1), C.R.S.2008, states:

(a) When money or property has been wrongfully withheld, interest shall be in an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

■ The purpose of section 5–12–102 is to discourage persons responsible for the settlement of claims from stalling or delaying payment until final settlement or judgment. Under the statute, "wrongful withholding" only requires failure to pay or deliver money when obligated to do so, and prejudgment interest "is available from the time a claim accrues." *Ross v. Old Republic Insurance Co.,* 134 P.3d 505, 512 (Colo.App.2006), *rev'd in part on other grounds,* 180 P.3d 427 (Colo. 2008).

■ Contrary to defendant's characterization of the trial court's prejudgment interest calculation, the court did not in fact award interest on the full $314,323.21 jury award for the entire period between the date plaintiff's claim accrued and the date judgment was entered. Rather, the court awarded prejudgment interest, at eight percent per annum compounded annually, on the $314,323.21 from the time plaintiff's claim accrued until the date defendant paid the insurer to settle the subrogation claim. Prejudgment interest after that date was calculated based on the balance remaining after the $212,071.94 was set off. Although we have concluded that the amount of the setoff should have been $172,657.55 rather than $212,071.94, and that the prejudgment interest must be recalculated to so reflect, we conclude that the trial court otherwise did not err in its method of calculating prejudgment interest.

Plaintiff was entitled to recover prejudgment interest on the entire amount "wrongfully withheld"—which the jury determined was $314,323.21—from the date of wrongful withholding to the date of payment. *See Ross,* 134 P.3d at 512. Defendant does not challenge the date used by the court as the date of the "wrongful withholding." One year thereafter, defendant made a partial payment of the amount wrongfully withheld by paying the insurer. Thus, after the date of the payment, prejudgment interest under section 5–12–102 was properly calculated based on the remaining unpaid balance. *See Metropolitan Property & Casualty Insurance Co. v. Barry,* 892 A.2d 915, 918, 924 (R.I.2006) (under Rhode Island prejudgment interest statute, prejudgment interest accrued on total damages from date of injury to date of partial payment, at which point partial payment was to be deducted and prejudgment interest calculated on reduced amount from date of partial payment to date judgment was satisfied).

The cases relied on by defendant either involve different statutes, *see Morris v. Goodwin,* 185 P.3d 777, 779–80 (Colo.2008) (addressing prejudgment interest under section 13–21–101(1), C.R.S.2008, which provides for such interest on "amount of damages assessed by the verdict of the jury, or found by the court"), or involve factual scenarios not present here. Thus, in recalculating prejudgment interest on remand, the trial court should employ the same method that it used in its initial calculation.

## ATTORNEY FEES

Pursuant to C.A.R. 38(d) and section 13–17–102, C.R.S.2008, plaintiff requests an award of the attorney fees she incurred in responding to defendant's argument regarding the $123,430.96 setoff. We agree that

that argument was frivolous. However, we conclude that plaintiff's argument regarding preservation of the issue of the proper amount of setoff was also frivolous. In these circumstances, we decline to award attorney fees.

The judgment is reversed to the extent it set off $212,071.94 from the jury award rather than the correct setoff amount of $172,657.55, and to the extent it was reduced to reflect a $30,841.62 cost award to defendant. The case is remanded for entry of a recalculated judgment amount, including recalculated prejudgment interest, in accordance with this opinion. In all other respects, the judgment is affirmed.

Judge TERRY and Judge LICHTENSTEIN concur.