**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PAHOUA XIONG,

      Plaintiff - Appellee /
      Cross-Appellant,

v.

KNIGHT TRANSPORTATION, INC.,

      Defendant - Appellant /
      Cross-Appellee.

Nos. 14-1390 & 15-1035
(D.C. No. 1:12-CV-01546-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

In May 2009, a car driven by Pahoua Xiong was merging onto Interstate

Highway 76 when it collided with a Knight Transportation truck. Testimony differed

dramatically as to whether Knight's truck occupied the right lane of the Interstate

when the collision occurred or Xiong had completed her merge and it occurred when

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

the truck moved from the middle lane to the right. The collision forced Xiong's car into the median where it overturned multiple times.

The jury apportioned fault at 40 percent to Xiong and 60 percent to Knight; its allocation of fault is not at issue here. Knight claims: (1) its motion for new trial (insufficient evidence to support the jury's award of damages) should have been granted, and (2) evidence regarding a similar lawsuit brought by Xiong (another collision) ought not to have been limited. The second suit involved injuries she suffered in a September 2010 car accident. Xiong cross-appeals from the denial of her motion for costs under Colo. Rev. Stat. § 13-17-202. We affirm.[1]

# I

## A

Xiong suffered a compression fracture in her spine at T-11 (lower middle back) as a result of the accident. She was in the hospital for five days. Her doctors encouraged physical therapy but Xiong failed to follow through. Instead, she repeatedly and successfully sought painkillers. Some evidence suggested her subjective complaints of pain were not supported by objective manifestations of injury, such as a limited range of motion. But other evidence — mostly her testimony and that of her family members — indicated her activities were limited by the injuries. In May 2010, she visited a clinic for unrelated reasons and reported her pain level to be 2 (on a 10-point scale). A month later, however, she reported

---

[1] Our jurisdiction derives from 28 U.S.C. § 1291.

level-10-pain and a need for Percocet, which was prescribed. By July, she claimed to be taking 5 to 6 Percocet tablets a day, but a drug test revealed no opiates in her system. Her physician's assistant (PA) found the anomaly to be "contradictory." Aplt. App. Vol. 2 at 499.

As a result of Xiong's September 2010 motor vehicle accident, she filed a second lawsuit. As with the cause of the collision, testimony conflicted over whether the second accident exacerbated her injuries from the first. The testimony of the PA treating her after the second accident attributed only 20% of her pain to the second accident and predicted she will experience lasting limitations in her work and social activities. The orthopedic surgeon she called testified to her need for surgery to fix the T-11 issues and credited that need directly to the first accident. The recommended surgery had not been done at the time of this trial; Xiong told the jury she could not afford it. Conversely, an orthopedic spine surgeon called as an expert by Knight, Dr. Brian Reiss, said his examination of Xiong revealed her fracture to be well-compensated for by the rest of her spine and, without the second accident, the only course of necessary treatment would have been an exercise program.

In total, Xiong sought $95,108.67 in medical expenses, detailed in her compilation of medical expenses, which was admitted as an exhibit. In tabulating the expenses, she alone decided what medical bills pertained only to the second accident and removed them from the compilation. A medical billing specialist put the cost of the recommended spinal surgery at $173,673.10. On this state of the evidence and more, the jury awarded Xiong $832,000, consisting of $282,000 for pain and

3

suffering, $268,000 for economic loss including past and future medical expenses, and $282,000 for physical impairment. In accordance with its determination on fault, the jury reduced these awards by 40 percent, resulting in a net $499,200 pre-interest verdict.

After the trial, a paralegal employed by Knight's counsel found a photograph of Xiong on her cousin's Facebook page, which led to the discovery of photographs of Xiong smiling with friends at homes, restaurants, a wedding, and what appear to be clubs, as well as what appears to be on a trip to Las Vegas.[2] Aplt. App. Vol. 1 at 162–84. Knight moved for a new trial, and later hired a private investigator to follow Xiong and record her daily activities.

In Knight's new trial motion, it claimed there was insufficient evidence to support the jury's determination of damages and the new evidence (discovered after trial) showed Xiong to have perpetrated fraud on the court. In a thorough opinion, the district judge denied the motion. The jury "certainly could have assigned lower dollar values" to Xiong's pain and impairment, he said, but Knight's argument that the verdict was wholly unsupported by the record was unpersuasive. *Xiong v. Knight Transp., Inc.*, 77 F. Supp. 3d 1016, 1021–22 (D. Colo. 2014). He then addressed Knight's three bases for its argument: (1) an affidavit of Knight's counsel detailing a number of witnesses who testified to Xiong's lack of pain or impairment; (2) one medical record; and (3) the Facebook photographs found by a Knight's paralegal

---

[2] Apparently, the photographs were theretofore unknown to Knight because Xiong's Facebook page is under "Pahouna Xiong" instead of "Pahoua Xiong."

(discussed above). The judge was not impressed with Counsel's affidavit summarizing the evidence, saying such a summary was not the "appropriate way to call the Court's attention to trial testimony," as it included no citations to the trial transcript. *Id*. at 1022. And, he noted, the single medical record Knight attached did not assign severe pain to Xiong at the time, but the doctor nevertheless assessed her with chronic pain due to injuries at T-11. He also rejected Knight's suggestion of unnecessary surgery, (because Xiong had yet to have it done) based on the impecunious circumstances she related in her trial testimony. Finally, as to the social media photographs, which did "little to support [Knight] in any event," he concluded the new evidence could have been discovered before trial and Knight offered no justification for its failure to develop it earlier. *Id*. at 1022–23. Addressing Knight's alternative request for remittitur, he observed that the jury was properly instructed, without objection, on how it should treat the damage evidence as to each of the accidents as well her (claimed) failure to mitigate damages.

**B**

During opening statements, Knight's counsel attempted to speak about the second accident and the resulting lawsuit to recover damages from those defendants. Xiong's objection to the mention of the second complaint being filed was overruled. At the end of the day, Xiong renewed her objection to mentioning the specifics of the second lawsuit, arguing such information was irrelevant to the jury's determination in this case and any probative value was outweighed by its prejudicial effect under Federal Rule of Evidence 403. In the ensuing colloquy, Knight's position was

revealed — the specifics of the second lawsuit were relevant as to the "motive of the witness," specifically "to show that she's a suit filer." Aplt. App. Vol. 2 at 281. This time the judge sustained the objection, saying "all they need to know is that there's another accident and there's another lawsuit, and that will be where we stop." *Id.*

C

Xiong moved for $40,216.07 in actual costs under Colo. Rev. Stat. § 13-17-202, which allows a plaintiff to be awarded costs if she makes a timely settlement offer lower than the final judgment. On May 28, 2014, about two years into the litigation, Xiong's counsel sent an email to Knight's counsel addressing a number of subjects. It included this phrase: "I want to provide you with a demand and follow up with you on a couple of stipulations. My client has given me the authority to make a demand to settle her case for $675,000.00." Aplt. App. Vol. 1 at 114. Counsel then went on to discuss mediations and stipulations. The judge denied Xiong's motion for costs because the passive voice used in the "offer," along with the lack of a request for a response, indicated the absence of a settlement offer for purposes of the costs statute.

II

According to Knight the evidence is insufficient to support (1) the $282,000 awards for pain and suffering and physical impairment, (2) all of Xiong's past medical expenses (because some should be attributed to the second accident), and (3) the estimated costs of future medical expenses relating to the anticipated surgery. Knight also thinks it is entitled to a new trial in light of the new evidence it

6

presented.  Finally, Knight maintains evidence about Xiong's other lawsuit should have been allowed.  We cannot agree with any of those propositions.

## A

We review the denial of a motion for new trial or remittitur for a manifest abuse of discretion.  *Blanke v. Alexander*, 152 F.3d 1224, 1235–36 (10th Cir. 1998).  Defendants "bear the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence."  *Id*. at 1236 (internal quotation marks omitted).  "Under this standard, the jury's award is inviolate unless we find it so excessive that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial."  *M.D. Mark, Inc. v. Kerr-McGee Corp*., 565 F.3d 753, 766 (10th Cir. 2009) (internal quotation marks omitted).  "A district court abuses its discretion in ordering a remittitur when the size of the verdict turns upon conflicting evidence and the credibility of witnesses."  *Prager v. Campbell Cty. Mem'l Hosp*., 731 F.3d 1046, 1061–62 (10th Cir. 2013) (internal quotation marks omitted).

To be sure, Knight's arguments raise questions about the severity of Xiong's injuries.  Substantial record evidence would support either a favorable or unfavorable view of them, especially under our very deferential abuse-of-discretion standard.  *See Prager*, 731 F.3d at 1054 ("[I]n many cases there will be a range of possible outcomes the facts and law at issue can fairly support; . . . we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." (internal quotation marks omitted)).

7

In challenging the $282,000 award for pain and suffering and physical impairment, Knight goes on at great length, pointing to evidence demonstrating the absence of significant pain. But, unlike economic-loss or expense damages, "general damages for pain and suffering, such as those [at issue] here, are not susceptible to proof by a set dollar amount." *Blanke*, 152 F.3d at 1237. Our standard for pain-and-suffering damages is even more deferential than our standard for economic damage determinations. The jury heard the evidence Knight cites, but it also heard Xiong's contrary testimony about the great pain she suffered at various times after the first accident. Add to that the pain testimony of her doctors. The trial judge took note of the competing evidence. The award is not so excessive as to raise an inference of passion, prejudice, or impropriety, and thus does not shock our collective conscience.

As for the physical impairment damages, Knight essentially argues: (1) Xiong's impairment was not very severe and (2) it was made worse by her failure to take remedial steps, such as physical therapy. Any failure to mitigate damages is an affirmative defense, about which the jury was instructed. But Knight does not (and did not) challenge the instructions. As we are unable to find fault in the jury's determination with respect to these damages, we have no reason to second guess the trial judge's refusal to order a new trial or a remittitur.

In challenging the $268,000 in economic damages for medical expenses, Knight takes issue with the medical necessity of the future spinal surgery. Its argument can be simply stated: Xiong has not had the surgery, so it must not be

8

medically necessary and, accordingly, cannot be included in future medical expenses. Knight also tells us any reasonable person would elect conservative management, calling for physical therapy before having back surgery. Such is a failure-to-mitigate argument about which the jury was instructed. As the trial judge noted, "insofar as the defendant alleges that [Xiong] is not in pain because she has not had the surgery, [Xiong] was questioned about this alleged discrepancy at trial. The plaintiff explained that she did not elect to have the surgery because she was unable to afford it." *Xiong*, 77 F. Supp. 3d at 1022. We see no legal reason to reverse his decision. Xiong's failure to undergo recommended surgery has little to do with its medical necessity, especially in light of her testimony about her impecunious circumstances. According to trial testimony, her orthopedic surgeon thought the surgery would be helpful while Knight's expert considered it to be unnecessary. The jury had divergent evidence from which to choose in deciding an issue committed to its judgment. We see no proper reason to disturb it.

Knight also complains about the evidence pertaining to Xiong's past medical expenses, claiming: for the medical expenses occurring after the second accident, some records are too ambiguous to permit an assignment to the first or second accident and, because Xiong has the burden of proof, they cannot properly be attributed to the first accident. But it did not raise the argument to the district judge.[3]

_____

[3] Though we may entertain forfeited theories on appeal if the district court's decision is "plainly erroneous," *Richison v. Ernest Grp.*, 634 F.3d 1123, 1128 (10th Cir. 2011), Knight has failed to argue plain error, which "marks the end of the
(continued)

9

*See Richison v. Ernest Grp.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited."). Aplt. App. Vol. 2 at 323–25.

In challenging the district court's decision regarding the post-trial Facebook photographs, Knight argues it should have been granted a new trial because the "new evidence" shows Xiong's vitality and physical condition to be inconsistent with her trial testimony. To obtain a new trial based on newly discovered evidence, "the moving party must show: (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence was not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) that a new trial with the newly discovered evidence would probably produce a different result." *Dronsejko v. Thornton*, 632 F.3d 658, 670 (10th Cir. 2011) (internal quotation marks omitted). The district judge correctly found the "new evidence" to offer little support for Knight's

road" for an argument not presented to the district court, *Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 741 (10th Cir. 2015) (internal quotation marks omitted).
Knight complained only, and without elaboration, about the jury's failure to apportion damages between the first and second accidents despite being instructed to do so. Aplt. App. Vol. 1 at 148–49. The forfeiture issue aside, Knight does not provide sufficient reason to believe the jury did not follow its instructions on apportionment. Instead, it calls on us to engage in undifferentiated speculation — the $268,000 award *must* mean the jury did not reduce any of Xiong's damages with the second accident in mind. Xiong testified to having removed from the medical-expense exhibit any expenses pertaining solely to the second accident. Admittedly, her testimony requires a somewhat of leap of faith and there is good reason to be skeptical. A jury might well be persuaded to reject it, but it was not beyond the pale for it to do otherwise. There was no abuse of discretion by the trial judge, even on merits of the issue.

argument and comes too late even if it could be said to contradict Xiong's claims. Indeed, it could have been discovered before trial. Knight credibly claims a lack of knowledge about Xiong's Facebook page (her name was misspelled) until her cousin posted a photograph of them together after the trial. But that affords Knight cold comfort; the photographs are ambiguous at best and, at worst, immaterial. The meat of Knight's "new evidence" is the report of the private investigator it neglected to hire until after it moved for a new trial. The district judge found no reason for Knight's delay in having Xiong surveilled at any point before or during trial when it surely would have been relevant. We agree. Whether this omission was a tactical decision or oversight, it was hardly diligent. There was no abuse of discretion.

**B**

"We review a district court's decisions on the admission or exclusion of evidence . . . for abuse of discretion." *Prager*, 731 F.3d at 1054. "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001) (internal quotation marks omitted). We will reverse the district court's decision "only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted). Rule 403 permits relevant evidence to be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403.

11

As an initial matter, Xiong argues this issue was not adequately presented to the district court because the district judge excluded the second lawsuit on an objection to Knight's opening statement, which was not the introduction or presentation of evidence. In our reading of the colloquy, though, it is clear the district court proscribed the subject matter of the second lawsuit on a wholesale basis for the remainder of trial and did not limit its ruling to the lawsuit's mention in the now-completed opening statement. *See* Aplt. App. Vol. 2 at 279–81. Knight nevertheless insists the second lawsuit is relevant and the district court abused its discretion. We disagree. In the colloquy, Knight's ultimate justification for getting into the second lawsuit was to show Xiong was a "suit filer," which is, in essence, an admission that Knight sought the precise prejudicial effect Xiong argued would pollute the jury's consideration. The district court was well within its discretion to keep such contaminating details away from the jury, and cannot be said to have "exceeded the bounds of permissible choice" in this case. *See McComb*, 519 F.3d at 1053.

### III

Under Colorado law, a plaintiff who "serves an offer of settlement in writing" more than fourteen days before trial that is rejected by the defendant, and "the plaintiff recovers a final judgment in excess of the amount offered, the plaintiff shall be awarded actual costs accruing after the offer" to be paid by the defendant. Colo. Rev. Stat. § 13-17-202(1)(a)(I). Such an award is mandatory and nondiscretionary in many respects. *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d

12

901, 910 (Colo. 1993). Colo. Rev. Stat. § 13-17-202 applies in diversity actions and is not preempted by the federal rules. *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1176–79 (10th Cir. 2000). The statute does not require any particular form for an "offer of settlement" and an offer need not be expressly entitled "settlement offer." *Dillen v. HealthOne, LLC*, 108 P.3d 297, 301 (Colo. App. 2004). A denial of costs is normally reviewed for an abuse of discretion, but we review a nondiscretionary interpretation of a state statute regarding costs de novo. *See Stauth v. Nat'l Union Fire Ins. Co.*, 236 F.3d 1260, 1263 (10th Cir. 2001).

In addressing Xiong's motion for actual costs, the trial judge could find no enumerated standard for what the Colorado statute contemplates an "offer of settlement" to be, and concluded counsel's statement was not a settlement offer because it did not solicit an acceptance, it backwardly stated in passive voice he has been given authority to settle for $675,000, and it did not request Knight's counsel respond to the settlement figure while there is an express invitation to discuss his position on mediation.

Reliance on counsel's failure to solicit an acceptance may be an inappropriate contract-law principle as here applied. *See Centric-Jones Co. v. Hufnagel*, 848 P.2d 942, 946 (Colo. 1993) (Section 13-17-202 "invokes a special statutory process spelled out in clear and unambiguous language which can and should be enforced without grafting contract principles onto it."). But the other bases for the denial are valid — the use of passive voice and counsel's juxtaposition of an invitation to respond about mediation with no invitation to do anything about the "demand."

13

*See Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) (even where unequivocal language suggests an offer is intended, such language cannot be viewed in isolation from other language). To be sure, the email is ambiguous, but the district judge applied the plain meaning of "offer" to the letter in accordance with Colorado law. *See Hufnagel*, 848 P.2d at 947 (holding offers under the statute should be construed with their ordinary meaning as a "matter of plain statutory interpretation").

Xiong argues the judge's analysis is tantamount to requiring specific language or formalities where the statute imposes none, but "that does not mean that any mention of a demand constitutes an *offer of settlement*." *Xiong*, 77 F. Supp. 3d at 1028 (emphasis in original). The judge's discussion about passive voice does not amount to the imposition of an extra-statutory requirement. To the contrary, it asks a potent question: Was there an offer? Do the words suggest a genuine offer or merely a carefully crafted illusion? Is the putative offer firm or is it only an invitation to further negotiate? Dealing with uncertainty is one of the greatest challenges facing a judge or jury. The ambiguity of the email cries out for careful analysis and context matters. In the end and in the aggregate, the trial judge considered it too ambiguous to qualify as an offer. Counsel's statement that he had authority to make a settlement demand for a stated amount is not the same thing as actually making one, particularly in the context presented here. *See Yeiser v. Ferrellgas, Inc.*, 214 P.3d 458, 463 (Colo. App. 2008) ("[T]he offer of settlement must be sufficiently definite to allow the plaintiff to weigh the risks and benefits of the offer against the judgment that may be

14

obtained." (internal quotation marks omitted)), *reversed on other grounds by* 247 P.3d 1022 (Colo. 2011). The relevant statute may impose no particular form or language for a settlement offer, but it does require a genuine offer. We cannot say the trial judge's analysis was erroneous. Clear language deployed in simple, declarative sentences might have made all the difference. Aside from the generic assertion that formalities not contained in the statue are forbidden, Xiong cites no authority suggesting the trial judge's interpretation of the statute is unsound. We see no reason to reverse.

**IV**

We affirm in all respects.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

15